## SECURITY FLOUR MILLS CO. *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 276.   Argued February 10, 1944.—Decided February 28, 1944.

282

*Messrs. Robert C. Foulston* and *John F. Eberhardt* for petitioner.

*Mr. J. Louis Monarch*, with whom *Solicitor General Fahy*, *Assistant Attorney General Samuel O. Clark, Jr.*, and *Messrs. Sewall Key* and *Bernard Chertcoff* were on the brief, for respondent.

*Messrs. J. B. Faegre* and *Hayner N. Larson* filed a brief on behalf of the Russell-Miller Milling Co., as *amicus curiae*, urging reversal.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The Circuit Court of Appeals has held[1] that the Board of Tax Appeals erred in deciding[2] that the petitioner was entitled, in reporting its income tax for the year 1935, to deduct payments made by it in 1936, 1937, and 1938. Because of a conflict of decision[3] we granted certiorari.

The petitioner, which conducts a flour mill, reports its net income on the accrual basis. As a first domestic processor of wheat it was subject to the processing tax levied under the Agricultural Adjustment Act of 1933. In the early months of 1935 it paid processing taxes, and claimed, and was allowed, the amount so paid as a deduction from gross income in its federal income tax return for 1935. The amount thus paid is not involved.

Petitioner instituted a suit to enjoin the collection of processing taxes, and obtained a temporary injunction enjoining further collection on the condition that *pendente*

---

[1] 135 F. 2d 165.

[2] 45 B. T. A. 671.

[3] *Helvering* v. *Cannon Valley Milling Co.*, 129 F. 2d 642.

*lite* it file information returns and pay the amount of the tax into a depository. From May 1 to December 31, 1935 petitioner so paid $93,000 and accrued over $9,000 additional upon its books for processing tax for the last month. It also accrued about $1,000 as a reserve for possible increases in taxes earlier paid. On January 6, 1936, the taxing provisions of the Agricultural Adjustment Act were held unconstitutional by this court. Certain of the petitioner's vendees attempted to intervene in the injunction suit and to have impounded moneys returned to them. Petitioner resisted and the court denied the intervention and made an order directing the depository to pay to the petitioner the impounded money, which was done February 28, 1936.

The petitioner set up on its books a suspense account covering the items above mentioned under the title "Reserve for Processing Tax, Claims, etc." The petitioner refunded various sums to its customers, totaling over $45,-000 in 1936, 1937, and 1938 to reimburse customers for processing tax included in the sales price of flour sold them in 1935 and not paid to the Collector of Internal Revenue as processing taxes. In its 1935 tax return petitioner deducted from gross income the total of the amounts impounded and accrued but not paid the Collector in the year 1935 as accrued tax liability. The Commissioner found a deficiency by disallowing the petitioner's deduction for taxes accrued but not paid in 1935.

The propriety of the claimed deduction depends upon the construction of §§ 23 (a), 41 and 43 of the Revenue Act of 1934.[4] Section 23 permits the deduction of ordinary and necessary expenses "paid or incurred during the taxable year in carrying on any trade or business." Section 41 declares the general rule that the taxpayer's annual accounting period shall be the fiscal year or calendar

---

[4] c. 277, 48 Stat. 680, 688, 694.

year, depending upon the method of accounting regularly employed, provided such method clearly reflects income. Section 43, on which the petitioner relies, provides:

"The deductions and credits provided for in this title shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. . . ."

It is settled by many decisions that a taxpayer may not accrue an expense the amount of which is unsettled or the liability for which is contingent, and this principle is fully applicable to a tax, liability for which the taxpayer denies, and payment whereof he is contesting.[5]  Here the petitioner, in figuring its costs and its sales price to consumers, added the amount of the processing tax, but it collected its purchase price as such and designated no part of it as representing the tax.  The petitioner received the purchase price as such.  Its tax liability, if any, to the United States did not differ from other debts.  Since it denied liability for, and failed to pay, the tax during the taxable year 1935, it was not in a position in its tax accounting to treat the Government's claim as an accrued liability.  As it admittedly received the money in question in 1935 and could not deduct from gross income an accrued liability to offset it, the receipt, it would seem, must constitute income for that year.

Petitioner nevertheless insists that § 43 of the Revenue Act, which requires that deductions be taken for the taxable year in which the amount was paid or accrued, creates an exception applicable to this case by its concluding clause, "unless in order to clearly reflect the income the

---

[5] See *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516, where this rule of law was reaffirmed and applied by the Board of Tax Appeals, the Fifth Circuit Court of Appeals, and by this court, and cases cited.

deductions or credits should be taken as of a different period." In short, the petitioner's position is that the Commissioner and the Board of Tax Appeals are authorized and required to make exceptions to the general rule of accounting by annual periods wherever, upon analysis of any transaction, it is found that it would be unjust or unfair not to isolate the transaction and treat it on the basis of the long term result. We think the position is not maintainable.

The Revenue Act of 1921, in §§ 214 (a) (6) and 234 (a) (4) [6] authorized the Commissioner to allow the deduction of losses in a year other than that in which sustained when, in his opinion, that was necessary clearly to reflect income. The qualifying clause of § 43 was first added as § 200 (d) of the Revenue Act of 1924.[7] The reports of both House and Senate Committees concerning this change said:

"The proposed bill extends that theory to all deductions and credits. The necessity for such a provision arises in cases in which a taxpayer pays in one year interest or rental payments or other items for a period of years. If he is forced to deduct the amount in the year in which paid, it may result in a distortion of his income which will cause him to pay either more or less taxes than he properly should." [8]

From these reports it is clear that the purpose of inserting the qualifying clause was to take care of fixed liabilities payable in fixed installments over a series of years. For example, a tenant would not be compelled to accrue, in the first year of a lease, the rental liability covering the entire term nor would he be permitted, if he saw fit to pay all the rent in advance, to deduct the whole payment as an expense of the current year. But we think it was not intended to upset the well-understood and consistently

---

[6] c. 136, 42 Stat. 227, 240, 255.

[7] 43 Stat. 253, 254.

[8] H. Rep. 179, 68th Cong., 1st Sess., pp. 10, 11; S. Rep. 398, 68th Cong., 1st Sess., pp. 10, 11.

applied doctrine that cash receipts or matured accounts due on the one hand, and cash payments or accrued definite obligations on the other, should not be taken out of the annual accounting system and, for the benefit of the Government or the taxpayer, treated on a basis which is neither a cash basis nor an accrual basis, because so to do would, in a given instance, work a supposedly more equitable result to the Government or to the taxpayer.

The question is not whether the Board, within its discretion, made a determination of fact. Compare *Dobson v. Commissioner*, 320 U. S. 489. It is rather whether, as matter of law, the Board misconstrued the extent of the power conferred by the Revenue Act.

"All the revenue acts which have been enacted since the adoption of the Sixteenth Amendment have uniformly assessed the tax on the basis of annual returns showing the net result of all the taxpayer's transactions during a fixed accounting period, either the calendar year, or, at the option of the taxpayer, the particular fiscal year which he may adopt." [9]

The rationale of the system is this: "It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation." [10]

This legal principle has often been stated and applied.[11] The uniform result has been denial both to Government and to taxpayer of the privilege of allocating income or

---

[9] *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359, 363.

[10] *Id.*, p. 365.

[11] See e. g. *Lucas* v. *Ox Fibre Brush Co.*, 281 U. S. 115, 120; *Burnet* v. *Thompson Oil & Gas Co.*, 283 U. S. 301, 306; *Woolford Realty Co.* v. *Rose*, 286 U. S. 319, 326; *Tait* v. *Western Maryland Ry. Co.*, 289 U. S. 620, 624; *Brown* v. *Helvering*, 291 U. S. 193; *Guaranty Trust Co.* v. *Commissioner*, 303 U. S. 493, 498.

outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount.[12]

But the petitioner urges that § 43 has altered the rule so that a hybrid system, partly annual and partly transactional, may, within administrative discretion, be substituted for that of annual accounting periods. It urges that the change was due to the desire of Congress to prevent distortion of true income. This must mean distortion of true income, not of a given year, but, in the light of ultimate gain, from a series of transactions over a period of years, growing out of, or in some way related to, an initial transaction in the taxable year. The very section on which petitioner relies, however, reiterates the adherence of Congress to the system of annual periods of computation.

As we said in *Dixie Pine Products Co.* v. *Commissioner, supra,* referring to a section identical with § 43 now under consideration, "The provisions of the Revenue Act of 1936 worked no significant change over earlier Acts respecting the permissible basis of calculating annual taxable income."

We are of opinion that the purpose of the language which Congress used was not to substitute, whenever in the discretion of an administrative officer or tribunal such a course would seem proper, a divided and inconsistent method of accounting not properly to be denominated either a cash or an accrual system.

The judgment is

*Affirmed.*

MR. JUSTICE DOUGLAS and MR. JUSTICE JACKSON are of opinion that the case is governed by *Dobson* v. *Commissioner,* 320 U. S. 489, and that the judgment should, for the reasons therein stated, be reversed.

---

[12] See the cases cited Notes 5, 9 and 11.