Omaha Commissary Company v. Commissioner.
Omaha Commissary Co. v. Commissioner
Docket No. 112019.
United States Tax Court
1944 Tax Ct. Memo LEXIS 192; 3 T.C.M. (CCH) 647; T.C.M. (RIA) 44221; June 28, 1944
*192 William P. Kelley, Esq., 516 Insurance Bldg., Omaha, Nebr., for the petitioner. Frank B. Schlosser, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: The Commissioner determined a deficiency in petitioner's income tax in the amount of $515.24 and in its excess profits tax in the amount of $480.26 for the calendar year 1939. The deficiencies resulted from including, in its gross income for that year, the gain realized from the sale of contracts and equipment in the amount of $5,627.13. The sole issue is whether the admitted gain is taxable in 1939 or 1940. The stipulated facts are hereby found. Other facts shown in our findings are based upon evidence adduced at the hearing. Findings of Fact Petitioner is a corporation, organized under the laws of Nebraska, with its principal office at Omaha, Nebraska. Its income tax return for the year 1939 was filed with the collector of internal revenue for the district of Nebraska at Omaha. Petitioner, and before its incorporation its president, had for a number of years been engaged in the general business of boarding and supplying laborers to various railroad companies and contractors under contract *193 with them. Two such contracts were in effect in 1939 - one with Chicago and Northwestern Railway Co., hereinafter referred to as Chicago Northwestern, and one with Eligin, Joliet and Eastern Railway Co., hereinafter referred to as E.J. & E. On August 7, 1939 petitioner entered into an agreement with J. D. McDermott providing for the sale and assignment to him of its contracts with Chicago Northwestern and E.J. & E. and for the sale to him of all the office fixtures, furnishings, equipment and merchandise of petitioner, including the items listed in an inventory and schedule attached, excepting from such sale and transfer certain parts of the office fixtures and furnishings of the Omaha office of petitioner. The aggregate sale price of such property thus sold and transferred was the sum of $6,000, which was paid by McDermott to petitioner on August 7, 1939. On the same date petitioner executed two assignments, each for a stated consideration of "$1.00 and other valuable consideration to it duly paid," one assigning to McDermott the feeding and commissary contract between it and Chicago Northwestern and the other assigning to McDermott the feeding and commissary contract between it *194 and E.J. & E. Each assignment contained a statement to the effect that McDermott agreed "to perform and carry out all the conditions, provisions and agreements" of the contract with the railroad company, each was signed by McDermott, and each contained a clause reciting that "McDermott agrees that the assignment of said contract to him and the consideration therefor is not contingent upon his substitution as party of the second part under said contract being approved and accepted by" the named railroad. Bill of Sale was executed by petitioner and delivered to McDermott on August 7, 1939. It described the property conveyed in the following language: "All of the office fixtures, furnishings, equipment and merchandise of the said Omaha Commissary Company, including the items listed and set forth on the inventory and schedule thereof hereto attached and made a part hereof, which to the best knowledge, information and belief of the Grantor is a reasonably true and correct inventory and schedule thereof. "The inventory of merchandise is to be taken as of September 15, 1939, and is to be paid for by said J. D. McDermott at the cost price thereof, which consideration is to be in addition *195 to the sum of Six Thousand Dollars ($6,000) representing the sale price of other property and rights this day sold to him. "This Bill of Sale shall convey and cover only that part and portion of the office fixtures and furnishings of the Omaha office that are listed and described on the inventory and schedule hereinafter referred to, and which inventory and schedule has heretofore been delivered to the Grantee for his inspection." The inventory and schedule referred to in the Bill of Sale had been prepared from an inventory taken in the year 1937 by deducting from the 1937 inventory items which had been shipped from, and by adding to the 1937 inventory items which had been thereafter acquired and added to, the Omaha stock. Other attached inventories listed the fixtures, furnishings and equipment located at the South Chicago camp of petitioner, near the Illinois Steel Works and the furnishings and equipment of petitioner located at the Gary, Indiana railroad yards of the E.J. & E. Ry. Co. Other documents referred to in the stipulation of the parties are copies of "the original letter of transmittal and of a receipt executed on behalf of the purchaser." The first mentioned is on *196 the letter-head of Olympic Commissary Co., is dated August 29, 1940 and is as follows: "Gentlemen: "Enclosed please find settlement contract signed as per your request. "Trusting same is satisfactory, and to see you in the near future, I beg to remain. "Yours very truly OLYMPIC COMMISSARY COMPANY BY @J. D. McDermott" The other is on the letterhead of petitioner, is dated August, 1940, and is as follows: "Received of the Omaha Commissary Company of Omaha, Nebraska, the equipment as per inventories of the Omaha end, which completes the inventories designated in the contract which was entered into by the Olympic Commissary Company and the Omaha Commissary Company on August 7, 1939. "Same fully satisfies and affords full satisfaction covering all claims of every name and nature that the Olympic Commissary Company may have by the rights of such contract. "Signed OLYMPIC COMMISSARY COMPANY BY E. Scharf Secretary" The sum of $6,000, received by petitioner from McDermott on August 7, 1939, as the sale price of the property above referred to, "was immediately thereafter deposited by the Petitioner in its regular bank account * * * and was immediately thereafter used by the Petitioner *197 in its business in the same manner as other ordinary deposits made in said bank account." In petitioner's books of account it "caused the account of Olympic Commissary Co. * * * to be credited with the sum of $6,000.00. * * * and said sum * * * was carried on the books and records and financial statements of Petitioner as a credit in favor of said * * * Company until the sum of $5,627.13 thereof was credited to the profit and loss account of Petitioner, and the sum of $372.87 was credited to the equipment account of the Petitioner on December 31, 1940, * * *." No part of the proceeds of the sale of the property was included on petitioner's income and excess profits tax return for 1939. It "did report $5,627.13 of proceeds of said sale as income" on its 1940 return. Opinion In the petition it is alleged, in substance, that it was a condition of the sale to McDermott that he should have the opportunity and privilege of checking and verifying the fixtures, furniture and equipment listed in the inventory, and, if any of them were not available for delivery, an appropriate adjustment would be made; that petitioner, by reason of the fact no inventory had been taken within a reasonably *198 short time prior to the sale, was unable to determine and was not aware of the shortages, if any, "and the net amount that would be realized from said sale could not be determined until after the purchaser had checked over the inventory * * * and either accepted the articles delivered as being in full compliance with the contract of sale or made demand of adjustment for the shortages"; that this was not done until 1940; and therefore that the sale was not actually effectuated until 1940. It is also alleged that "one of the conditions of the sale and transfer of the contracts and equipment [was] that Petitioner would undertake to have the Elgin, Joliet and Eastern Railway Co. accept * * * McDermott as a substitute for Petitioner under the feeding and commissary contract, and that said railroad company would renew the feeding and commissary contract with him, and that it was not until January 1940 that the renewal of such contract was effected * * *" Petitioner's president was permitted to testify, over the objection of counsel for respondent with reference to the understanding in connection with the inventories. He said: "He (the purchaser) was to check the inventories on the 15th *199 of September, 1939; that is, check the supplies in the inventories of the commissaries at both camps, Indiana and Illinois. These transactions in connection with the commissaries and supplies were paid for in full and receipts given; taking over the equipment of the Chicago office in the store room there, they took it over, but they did not give me any receipt on the items they had received. I didn't get any in 1939 whatsoever. The equipment was left, and so I was up in the air about knowing what there was turned over. I wrote them several times, and in November Mr. Brown, who is the head man of McDermott's - one of them - wrote me a letter and assured me they would be out in November - he and Frank - to check the Omaha equipment. Well, they never came out, and they were supposed to come out November 18, and they didn't come out, and so I went to Chicago and talked with them there and told them - I says, 'I'd like to get this thing straightened up as soon as possible,' and they assured me that they would try and do it. So I just drug along with it and let the thing go, and of course I know they were busy, and of course I didn't want to be unreasonable, so I just let it drift." A check *200 of the inventory was made in 1940, as indicated in the correspondence shown in the findings. This is the sole evidence bearing upon the first ground urged by petitioner as a basis for setting aside the Commissioner's determination. The evidence upon the other is equally tenuous. The witness stated he had "assured Mr. McDermott that he could rely upon the renewal of the E.J. & E. contract" but that he could not vouch for the Chicago Northwestern. A brother of the witness was in the employ of the E.J. & E. Co., which caused him to feel confident the contract would be renewed. The witness stated that while he had given the purchaser some assurance the contract would be renewed, he "couldn't consistently with due respect to other officials include any such contract in writing." The contract actually was renewed, though probably (the evidence is silent on this point) not until January, 1940. The stipulated facts and the evidence, in our judgment, cannot fairly be construed to support petitioner's contention that all events necessary to fix the liabilities of the parties had not occurred until the year 1940. As we construe the facts, the sale was made, the consideration was unconditionally *201 received, and taxable gain resulted in 1939. (Sections 22 (a) and 42 I.R.C.) North American Oil Consolidated v. Burnet, 286 U.S. 417. This is true whether petitioner kept its books on the cash or an accrual basis. The cases cited by petitioner - Commissioner v. R. J. Darnell, Inc., 60 Fed. (2d) 82; Schoellkopf Aniline & Chemical Works v. United States, 3 Fed. Supp. 417, and Frost Lumber Industries, Inc. v. Commissioner, 128 Fed. (2d) 693 - are but applications of the well-established rule, succinctly stated in the last-mentioned case: "An item accrues for purposes of taxation when all events have occurred necessary to fix the liabilities of the parties and to determine the amount of such liabilities." The facts have been stated fully. It would serve no useful purpose to repeat them. The principal question of law is obviously recognized and understood by counsel for both parties. Whether under the law of Nebraska the contract, during 1939, would have been subject to rescission, as petitioner urges, if it had "failed to perform the contract, especially with *202 referenec to procuring renewal of the railway [E.J. & E.] contract" [1] is not clear from the authorities cited. Slagle v. Securities Investment Corporation, 131 Nebr. 319, 268 N.W. 294, cited by petitioner in this connection, merely applied the generally recognized rule that where property is purchased, in reliance upon material representations made by the seller which turn out to be false, the purchaser may rescind the contract. It may even be that petitioner's assurance the contract would be renewed would have given McDermott a cause of action for damages, notwithstanding the statement in the contract that the consideration was "not contingent upon his substitution as party of the second part under * * * [the] contract being approved and accepted" by the railroad. As we view it, however, this question may be passed. Cf. Commissioner v. Alamitos Land Co., 112 Fed. (2d) 648, certiorari denied 311 U.S. 679. Petitioner's suggestion that the rule of Helvering v. Cannon Valley Milling Co., 129 Fed. (2d) 642, *203 should be applied since the sale transaction was an unusual one and not something that would arise in the ordinary course of its business has been considered. There are two reasons why this may not be done: First, the facts are not analogous; Second, the case has probably been overruled by Security Flour Mills Co. v. Commissioner, 64 S. Ct. 596. In our judgment the Commissioner committed no error in determining the deficiencies in tax. Decision will be entered for the respondent. Footnotes
1. The quotation is from petitioner's brief.↩