AMERICAN POTASH AND CHEMICAL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5494.   Promulgated November 8, 1946.

*William L. Kumler, Esq.*, for the petitioner.
*E. A. Tonjes, Esq.*, for the respondent.

## OPINION.

Van Fossan, *Judge*: It is contended by respondent that a purchaser of petitioner's products was not entitled to the 4 per cent contract completion discount until he had accepted delivery of the entire tonnage contracted for, that hence such discount was not accruable or incurred as a liability by petitioner within the meaning of section 43 of the Internal Revenue Code [1] until the purchaser had performed all

---

[1] SEC. 43. PERIOD FOR WHICH DEDUCTIONS AND CREDITS TAKEN.

The deductions and credits (other than the corporation dividends paid credit provided in section 27) provided for in this chapter shall be taken for the taxable year in which "paid or accrued" or "paid or incurred," dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. * * *

acts necessary to entitle him to the discount, and that such discount was allowable as a deduction to petitioner only to the extent that the discount related to contracts completed by acceptance of the delivery of the entire tonnage contracted for during each of the taxable years.

The petitioner argues that the purchasers of its products under contract are unconditionally obligated to accept full delivery of the total tonnage contracted for; that only if the purchaser violates his contract by refusing to accept a delivery does such purchaser become obligated to pay the 4 per cent "additional price" upon potash already delivered, and, correspondingly, only upon that condition does the petitioner become relieved of the obligation to allow the 4 per cent discount; and that, although the 4 per cent is denominated a discount, it is by nature a penalty or liquidated damages which the purchaser becomes obligated to pay the seller on all goods previously shipped if he violates his contract by failure to accept all the entire tonnage contracted for.

It is well established that taxable net income must be determined on the basis of facts as they actually existed during the taxable period in controversy. *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359; *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417. Where the accrual method of accounting is used, items of income and expense must be allocated to the years in which the right to receive, or the obligation to pay, has become final and definite in amount. *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281. Accounting nomenclature by which an item is described is not controlling as to its accruability. *Rogers, Brown & Crocker Bros., Inc.*, 32 B. T. A. 307, 314; *Anderson-Clayton Securities Corporation*, 35 B. T. A. 795, 803. These principles are not questioned. It is as to their application that the parties disagree.

Although the petitioner argues that the obligation of the purchaser to accept delivery of the entire tonnage contracted for and the obligation of the petitioner to sell and deliver such tonnage at the basic price stated, less the discounts of 8 per cent and 4 per cent, became fixed at the time of the execution of the contract, it did not treat the purchase contracts accordingly on its books of account. It did not, upon the execution of the contract, enter the total tonnage contracted for as a sale in that amount less the 8 per cent and 4 per cent discount. On the contrary, each contract was reflected on its books only as each delivery thereon was made, i. e., sales were credited to the extent of each partial delivery on the contract and the purchaser was charged with the same amount. The amount so entered was the contract price on the partial delivery, less the 8 per cent discount only, which amount the purchaser was required to pay in cash against invoice. Thus the petitioner

treated each contract as consisting of separate transactions corresponding in number to the deliveries required to complete the contract. It was not until the entire tonnage called for by the contract had been delivered that the 4 per cent contract completion discount applicable to the entire tonnage was either credited or paid to the purchaser. Under the contract the purchaser was not entitled to, and the petitioner was not obligated to credit or pay, such discount until acceptance of delivery of the entire tonnage specified. It is true that petitioner at the time of each delivery charged or reduced sales with the 4 per cent discount applicable to such delivery. Such discount, however, was not at that time credited or paid to the purchaser, but was credited to an account captioned "Reserve for Contract Completion Discounts," and it was not until delivery of the tonnage specified in such contract had been completed and accepted that the amount of the discount applicable to the entire tonnage was charged against such reserve and credited or paid to the purchaser. Under the contract the purchaser clearly obligated itself to purchase the tonnage specified. But just as clearly such purchaser was not entitled to receive, and the petitioner was not obligated to allow, the 4 per cent discount until completion of delivery of the entire tonnage specified.

In *American Cigar Co.*, 21 B. T. A. 464, 499; affd., 66 Fed. (2d) 425; certiorari denied, 290 U. S. 699, it is stated that "Reserves for liabilities which at the end of the year are still contingent are not deductible even under an accrual system, because all of the events necessary to fix the taxpayer's liability and the amount thereof have not happened." See also, *Albert C. Becken, Jr.*, 5 T. C. 498, 505–506. Although the *American Cigar Co.* case involved a cash discount, the principle stated is equally applicable herein, for, until the customer had accepted delivery of the entire tonnage specified in his contract, no obligation arose on the part of the petitioner to allow the 4 per cent contract completion discount and it was entitled to receive the selling price unreduced by such discount.

*Helvering* v. *Russian Finance & Construction Corporation*, 77 Fed. (2d) 324, and *Warren Co.*, 46 B. T. A. 897, cited by petitioner, are distinguishable on the facts. In the former case the taxpayer agreed, among other things, to pay $2 a ton for 600,000 tons of ore at the expiration of 10 years from date of agreement, with interest payable semiannually from the time of delivery. By the terms of the agreement taxpayer was to be discharged from his obligation to make the $2 per ton payment upon the occurrence of any one of three specified events, none of which occurred. The 600,000 tons were delivered during 1925, 1926 and 1927 and taxpayer claimed deduction of the amount charged on its books during each of such years. It was held that under the terms of the agreement the obligation of taxpayer to pay the $2

per ton became fixed upon delivery of the ore and that the possibility that taxpayer might be subsequently discharged of its liability by some condition subsequent did not prevent the accrual of its liability on its books. In the latter case the taxpayer sold its products through agents to whom it quoted a net price and permitted the agents to establish the selling price, with the understanding that the difference between net price and selling price was to be paid to the agents as commission. In no case was taxpayer entitled to more than the net price. The purchaser was to pay taxpayer and it was to retain a portion of the commission until collections were made. It was held that under the terms of the agreement commissions accrued to the sales agents immediately when sales were made, although only a part of the commissions were then payable and the balance was to be paid later when collections were made. As heretofore pointed out, petitioner's obligation to allow the 4 per cent contract completion discount did not arise until delivery of the entire tonnage contracted for.

It is contended by petitioner that the controversy as to the discount involves a right to receive income rather than an obligation to pay an expense. It argues that, viewed as income, the discount represented contingent income which petitioner had no fixed and definite right to accrue until the customer failed to carry out his unconditional contractual obligation to accept delivery of the entire tonnage specified. This argument also is based on the premise that the price fixed in the contract was, as to each shipment, unconditionally subject not only to the 8 per cent discount, but also to the 4 per cent discount. Such premise is not based upon facts or a reasonable interpretation of the contracts. The petitioner upon each shipment billed its customers at the basic price quoted in its price schedules, less the 8 per cent discount only. The customer was obligated to pay the invoice price on each delivery and petitioner could have legally enforced payment thereof. The petitioner received the invoice price as a matter of right and without restriction as to its disposition. Under such circumstances the entire invoice price on each partial delivery was includible in gross income. See *North American Oil Consolidated* v. *Burnet, supra; Brown* v. *Helvering*, 291 U. S. 193; and the *Warren Co., supra*.

The action of the respondent in allowing the deduction of the 4 per cent contract completion discount to the extent of $24,404.92 in 1940 and $84,268.35 ($8,561.41 plus $75,706.94) in 1941, and in disallowing the deduction thereof to the extent of $75,706.94 in 1940 and $62,940.76 in 1941, is approved.

*Decision will be entered for the respondent.*