ROBERT REIS & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36542.    Promulgated May 6, 1953.

*Paul Edgar Schwartz, Esq.*, and *Harold H. Meyers, Esq.*, for the petitioner.
*Robert R. Blasi, Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* The respondent determined deficiencies in income tax for the years 1946 and 1947 in amounts totaling $10,979.80. Several of the issues raised by the pleadings have been settled by stipulation and can be reflected in a Rule 50 computation.

The single issue for decision is the propriety of the respondent's failure, in determining the net operating loss carry-back to 1947, to increase the amount of the petitioner's net operating loss sustained in 1949 by the amount of excess profits taxes for 1943 and 1944 which were contested by the petitioner until finally settled and paid in 1949.

All of the facts have been stipulated and the stipulation is adopted as our findings of fact.

The petitioner is a New York corporation and filed its Federal income tax returns for the taxable years 1946, 1947, 1948, and 1949 with the collector of internal revenue for the third district of New York.

The petitioner kept its books and records and filed its tax returns on a calendar year basis using the accrual method of accounting during all the times mentioned herein.

In a 30-day letter, dated March 24, 1948, the agent in charge proposed adjustments of the petitioner's 1943 and 1944 income and excess profits taxes, resulting in a net deficiency of $119,819.30. The principal adjustment resulted from the elimination of an excess profits credit carry-over from 1942 by reason of the disallowance of a loss sustained in 1942.

The 1942 loss resulted from the worthlessness of stock of Valco Manufacturing Company, Inc., a subsidiary of the petitioner. The disallowance of such loss was then being contested in litigation before this Court (Robert Reis & Co., Docket No. 17322). Since the excess profits credit carry-over from 1942 was dependent upon the allowance of the 1942 loss in dispute, the respondent extended the petitioner's time to file its protest to the 1943 and 1944 assessments pending the determination of the 1942 litigation, and after the disposition of that litigation, until January 4, 1949.

The petitioner duly filed its protest, and on or about February 4, 1949, had a hearing thereon. After extended conferences, on March 22, 1949, the petitioner reached a settlement and forwarded a Form 874 to the conferee whereby the dispute relative to the proposed deficiencies was settled by the petitioner's consent to the assessment of the deficiency in income tax of $3,024 for the year 1944, and deficiencies in excess profits tax of $60,012.74 for the years 1943 and 1944.

The petitioner contested the 1943 and 1944 taxes until the settlement was effected in March 1949, and did not, prior to such time,

either enter such taxes upon its books or agree to pay any part thereof.

On or about June 27, 1949, the petitioner paid the sum of $60,012.74 in accordance with the settlement which constitutes taxes imposed by subchapter E of chapter 2 of the Internal Revenue Code.

The petitioner sustained a net operating loss in 1948 and 1949. Exclusive of any addition thereto, as provided in section 122 (d) (6) of the Code, the net operating loss for the year 1949 amounted to $351,339.69 and has been carried back to the year 1947.

For the year 1949 the petitioner filed a separate return. For the years 1943 and 1944 the petitioner filed consolidated returns. Under the provisions of section 122 (d) (6) (C), $46,337.44 of the $60,012.74 excess profits taxes hereinabove described is allocated to the petitioner as its share of excess profits tax as a member of an affiliated group.

This proceeding, which was heard prior to our decision in *Lewyt Corporation*, 18 T. C. 1245, presents an interesting variation of the questions there considered. *Lewyt* decided that the phrase "paid or accrued" as used in section 122 (d) (6) has reference to the system of accounting used by the taxpayer. We are here concerned with the proper application of that holding to the facts of this case.

Section 122 defines "net operating loss" to mean the excess of certain deductions over gross income, with specified exceptions, additions, and limitations. One of the deductions, subject to rules not here important, is set out in section 122 (d) (6) which provides as follows:

There shall be allowed as a deduction the amount of tax imposed by Subchapter E of Chapter 2 paid or accrued within the taxable year, * * *

The taxes imposed by subchapter E of chapter 2 are "excess profits taxes" and that term will be used for convenience.

The facts are that proposed deficiencies in excess profits taxes for 1943 and 1944 were in dispute and that the petitioner contested its liability to pay the deficiencies until March 1949 when a settlement was reached. The amount due under the settlement was paid in June of 1949. Prior to that time the petitioner did not agree to pay any part of the deficiencies or accrue the taxes on its books.

The petitioner's contention is that the excess profits taxes in question accrued in 1949, were paid in 1949, and that they therefore should be allowed as a deduction under section 122 (d) (6) in that year.

That the petitioner is correct is foreshadowed by our discussion of a somewhat similar contention made by the taxpayer in *Lewyt*. There, the taxpayer argued that amounts of contested excess profits taxes for prior years, which amounts were tendered to the collector in 1947, were properly accrued in 1947 and so deductible under 122 (d) (6), either because the dispute was settled in that year or the amounts constituted taxes paid in that year. On the facts there, we held that the dispute was not terminated in 1947 and that the amounts tendered were

not "taxes paid," with the result that the taxpayer could not take the deduction in 1947. Had the facts been otherwise a contrary result is clearly indicated.

The facts before us favor the taxpayer and require the opposite answer. It is agreed that the taxes in question were contested, that the contest ended with a settlement in 1949, and that the taxes were paid in that year. We think the petitioner is thus brought within the ambit of *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516, and *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281. See also *Chestnut Securities Co.* v. *United States*, (Ct. Cl.) 62 F. Supp. 574, and *Lehigh Valley Railroad Co.*, 12 T. C. 977, which indicate that when an accrual basis taxpayer pays all or part of a contested liability, that taxpayer is required to deduct the amounts paid in the year of payment. We hold that the petitioner is entitled to deduct the amount of excess profits taxes paid in 1949 under section 122 (d) (6) as taxes "paid or accrued within the taxable year."

The respondent argues strenuously (and the petitioner does not disagree) that "paid or accrued" should be interpreted to refer to the taxpayer's accounting system. Having won that point he then insists just as strenuously that *Dixie Pine Products Co.* v. *Commissioner*, *supra*, and *Security Flour Mills Co.* v. *Commissioner*, *supra*, are not determinative because there the Court was dealing not with Federal income or excess profits taxes, but with state and Federal excise taxes. The substance of his argument is that, although we have construed "paid or accrued" to have reference to the taxpayer's accounting method, yet the "rules of accrual accounting themselves are flexible enough to permit a special rule for these circumstances." "Even under the rules of accounting," he says, "it appears that as between the debtor petitioner and the creditor respondent, the tax 'accrues' in the accounting period for which levied without regard to what delays or procedures one puts the other to in one's effort to defeat, and the other's effort to collect, the proper tax." He cites *Stern Brothers & Co.*, 16 T. C. 295, as authority, but that case dealt with the accrual of Federal income and excess profits taxes as called for by section 35.718–2 (a) of Regulations 112 relating to accumulated earnings and profits. That problem, as Judge Hill pointed out, is distinguishable "from the more usual accrual for purposes of deduction from, or inclusion in, income." We are here dealing with an item specifically denominated "a deduction" in the statute, and are of the opinion that *Stern Brothers* is not pertinent. Having held in *Lewyt* that "paid or accrued" has reference to the taxpayer's system of accounting, we think the petitioner here, being an accrual basis taxpayer, is entitled to the application of the ordinary rules of accrual accounting (referred to in the cases cited above) in determining the proper year in which

to accrue the contested excess profits taxes. As we see it, that year was 1949 when the contest was settled and the taxes paid.

Nor are we able to agree in the following argument made by the respondent:

It is urged by the respondent that the adjustment under Section 122 (d) (6) was intended to be eliminated entirely in computing the net operating loss carry-back for excess profits purposes.

Certainly the intention of Congress is clear that the adjustment under Section 122 (d) (6) must be disregarded in cases which come within the purview of Section 711 (a) (1) (J) and Section 711 (a) (2) (L), because it is specifically provided therein, depending upon the credit method used, that in computing the net operating loss for any taxable year under Section 122 (a) and the net income for any taxable year under Section 122 (b), no deduction shall be allowed for any excess profits tax. The inclusion in Section 710 (a) (1) (B) of a general limitation formula does not authorize the inference that Congress left open a loophole which would permit a taxpayer indirectly to claim the benefit of a deduction which had been expressly denied by Section 711. Instead, it is a logical interpretation to say that the specific prohibition against the allowance of the adjustment permitted by Section 122 (d) (6) which is contained in the applicable provisions of Section 711 should apply with equal force to the computation of surtax net income under Section 710 (a) (1) (B) in establishing the over-all limitation provided therein.

To the contrary, it seems to us that had Congress intended to eliminate the 122 (d) (6) adjustment entirely it would have done so just as it specifically did do so in sections 711 (a) (1) (J) and (a) (2) (L). No contention is made that those sections are here applicable. Cf. *Equinox Mill*, 16 T. C. 267. This argument has also been rejected by the Court of Claims in overruling the Government's motion for rehearing in *Olympic Radio and Television, Inc.* v. *United States* (Ct. Cl. Mar. 3, 1953).

The respondent also argues that the deduction should not be allowed in 1949 because that would distort the petitioner's excess profits picture, since, logically, the excess profits taxes for 1943 and 1944 have no reference to 1949 income. If we accept this argument, it would mean that a cash basis taxpayer in the same situation as the petitioner could not claim the deduction in 1949, though that was the year in which the taxes were paid, for to allow a cash basis taxpayer the deduction in 1949 would distort his excess profits years just as much as in the case of a taxpayer using the accrual system. The respondent does not argue that a cash basis taxpayer could not have the deduction in 1949. We do not accept the argument.

To summarize, we think the statute plainly provides for the deduction claimed by the petitioner in 1949, and hold it should be allowed.

In passing, we note that our holding refutes a contention made by the taxpayer in the *Lewyt* case. There it was argued that to construe

"paid or accrued" as used in section 122 (d) (6) as referring to the accounting system used by the taxpayer would deny accrual basis taxpayers any benefit under the section. We point out that the accrual taxpayer here does get a benefit.

Reviewed by the Court.

*Decision will be entered under Rule 50.*