JoNes, Chief Judge,
delivered tbe opinion of tbe court:
Tbis is a suit for wbat plaintiff claims is a balance due under tbe terms of Private Law 239, 82d Congress, 1st session, 66 Stat. A92, the pertinent part of which is as follows:
* * * That tbe Secretary of tbe Treasury is authorized and directed to pay, out of any money in the Treasury not otherwise appropriated, to Wilson Electric Company, Incorporated, of Kansas City, Missouri, the sum of $104,121.62, less appropriate tase adjustments to the extent that said company has benefited from this loss in computing its Federal excess profits taw and income tax liability for any year. The payment of such sum shall be in full settlement of all claims under War Department Contract Numbered W-36-089-sc-3785, dated November 13,1943, as amended, which claims are based upon additional costs incurred as the result of changes in packing requirements for military communication *561 equipment furnished under terms of said contract. [Emphasis is supplied]
The plaintiff claims it should have been paid $31,097.56. The defendant claims the amount of the liability was $15,097.63. This amount was paid to the plaintiff. The suit is for the balance, $15,999.93.
Both parties have moved for summary judgment.
The facts as disclosed by the pleadings ai’e substantially as follows:
On November 13,1943, the plaintiff entered into a contract with the defendant by the terms of which the contractor agreed to furnish 1,120 operators’ control cabinets and associated equipment. The contract specified the manner in which the items were to be packed. On August 11,1944, the contractor was instructed by the Government to stop shipment of material on order pending a changeover to a different method of packing. The contractor complied. The Government, by letter dated September 26, 1944, requested the contractor to furnish information as to the increased costs which would result from the change in packing specifications. The contractor indicated that it was undertaking an investigation to determine these facts, and later by letter of June 4, 1945, it advised the Government that there would be no increase in price to the Government as the result of the change and evidenced an intention not to file a claim for additional compensation on account of the change. Final payment on the contract was made in September 1945.
By letter dated October 10, 1945, the contractor stated that it had erred in its previous calculation and inquired as to whether the Government would be willing to open the matter and give the contractor an opportunity to submit packing costs and agree to a fair price increase in the contract. The contracting officer advised that he had no authority to consider any increase in price inasmuch as the contract had been completed and payment made. The contractor on November 30, 1945, submitted a claim to the contracting officer in the sum of $108,554.45. The claim was examined by the contracting officer and after a conference between the parties was reduced to $104,121.52. This claim was transmitted to the General Accounting Office with an *562 administrative recommendation of the contracting officer that the additional payment be made if basis in law were fonnd therefor. The claim was denied by the General Accounting Office.
The primary basis of the denial was that the contractor’s claim was not presented prior to the date of final settlement of the contract as required by the contract. After this denial the special act was passed.
The plaintiff claims that it should have been paid under the terms of the special act the sum of $104,121.52 less the income and excess profits taxes on that amount for the year 1952. Such a calculation would produce the net amount which plaintiff claims, to wit, $31,097.56. In other words if this amount were treated as additional income in its fiscal year ending June 30,1952, plaintiff’s income and excess profits taxes for that year would have been $73,023.96 on this particular item.
The defendant contends that the proper settlement under the special act should have as its basis the net refund of the difference between the face amount of the award, minus the tax benefit realized by plaintiff in its taxable year 1945 through the reduced taxes it paid that year on account of not receiving its excess costs at that time. Calculated on this basis plaintiff’s payment under the special act was $15,097.63. A check for this amount was transmitted to plaintiff on February 26, 1953.
Plaintiff has filed in support of its motion for summary judgment a well-documented brief to the effect that income is to be reported and taxed on an annual basis and for the year in which the money was collected.
As we interpret the special act this is not a tax refund action, although a tax calculation is involved. According to the Senate amendment the plaintiff was awarded “$104,121.52 less appropriate tax adjustments to the extent that the said company has benefited from this loss in computing its * * * tax liability for any year.” Thus the award was not $104,121.52, but that amomit less the benefits plaintiff had received. Plaintiff’s sole and only benefit from the loss was measured by its increased deduction of that amount and its consequent decreased tax liability for the *563 taxable year 1945. By virtue of the fact that plaintiff did not receive the proper payment in 1945 its income and excess profits tax liability for that year was $89,023.89 less than it would have been obligated to pay had it received payment at that time of the extra costs which it incurred during that taxable year.
It will be noted that the special act refers to “the extent that the said company has benefited from this loss” [Italics ours]. The only year in which it had at that time received any benefits was in the taxable year 1945 and the special act refers to the tax benefits in any year. The special act made no reference to future benefits or to benefits that would accrue when it should receive payment under that act. The act referred to past benefits rather than to current or future benefits. The special act became effective on August 30, 1951, shortly after the beginning of plaintiff’s fiscal year which ended June 30,1952.
The tax adjustments for the fiscal year 1945 thus operate to place plaintiff precisely in its correct taxable position. Congress reduced the face amount of the award by the amount of tax benefits which plaintiff received in that year from the deduction.
If plaintiff had not made the mistake and had presented its proper claim for excess costs in the year in which they were properly payable its tax would have been $89,023.89 greater than it actually paid. It thus received those benefits in that year, to wit 1945, and since the act correctly states that the amount to be paid it in 1951 was the face amount less the benefits which it had theretofore received in any year it was properly paid the difference which was $15,091.63. The wording of the act makes this unmistakably clear.
Had it been the intention of the Congress to pay the plaintiff the face of the award less current Federal income and excess profits taxes when the act was passed in 1951 it could have so provided in simple terms. In fact, if the award had been made without any provision as to income and excess profits taxes plaintiff would still have been subject to the income and excess profits taxes for 1951. In other words, the position which the plaintiff takes would *564 make the Senate amendment, which, was agreed to by the House and became a part of the law, completely meaningless.
We think the opinions in the cases of Security Flour Mills Company v. Commissioner, 321 U. S. 281, and Diane Fine Products Company v. Commissioner, 320 U. S. 516, are inapplicable to the case at bar.
The construction by the Commissioner of Internal Revenue of Private Law 239 restores plaintiff to the exact position which it would have held had the excess costs of packing merchandise for the Army been claimed and paid when they were incurred. The plaintiff therefore has been paid the amount which the special act provided, less the benefits which it received in the year in which the transaction occurred.
Plaintiff’s motion for summary judgment is denied, defendant’s motion for summary judgment is granted, and the petition is dismissed.
Laramoke, Judge; MaddeN, Judge; Whitaker, Judge; and Littletow, Judge, concur.