Rex and Geraldine Sorensen v. Commissioner.
Sorensen v. Commissioner
Docket No. 55620.
United States Tax Court
T.C. Memo 1956-234; 1956 Tax Ct. Memo LEXIS 59; 15 T.C.M. (CCH) 1222; T.C.M. (RIA) 56234; October 24, 1956
*59 Carl E. Davidson, Esq., Yeon Building, Portland, Ore., for the petitioners. Alonzo W. Watson, Jr., Esq., for the respondent. LEMIRE Memorandum Opinion LEMIRE, Judge: This proceeding involves a deficiency in petitioners' income tax for 1951 in the amount of $12,639.48 and additions to the tax under section 293(a), Internal Revenue Code of 1939, in the amount of $631.97. The sole contested issue is whether for the taxable year 1951 petitioners are entitled to accrue a contingent liability resulting from their breach of certain Government contracts. The facts have been fully stipulated and are found accordingly. [Findings of Fact] Petitioners are husband and wife and residents of Coos Bay, Oregon. They filed their joint income tax return on November 19, 1951, for the period July 1, 1950, to June 30, 1951, with the collector of internal revenue for the district of Oregon. Prior to April 8, 1950, Rex Sorensen (hereinafter referred to as the petitioner) was a partner of Sorensen & Johnston, a partnership engaged in the wholesale lumber business in Coos Bay, Oregon. The partnership reported its operations for income tax purposes on the basis of a fiscal year *60 ended June 30. On April 8, 1950, petitioner acquired the assets of the partnership and continued the business as a sole proprietorship. On their joint income tax return filed for the calendar year 1950, petitioners reported their share of partnership income for the final period of partnership operations ended April 8, 1950, but did not report any income from the business operated as a proprietorship thereafter. On the joint return filed for the period ended June 30, 1951, petitioners reported the income from the business operated as a sole proprietorship beginning April 8, 1950, and ended June 30, 1951, but did not report on such return any income from the business for the remaining six months of 1951. Upon audit of petitioners' returns for 1950 and 1951, petitioners' income from the lumber business for those and subsequent years was recomputed and adjusted by respondent in order to place petitioners on a calendar year basis and accrual method of reporting income. In 1953 petitioners agreed to the change in the method of reporting and accepted substantially all the adjustments, but asserted that they were entitled to a deduction on their 1951 return for an alleged business loss *61 in the amount of $16,406.87, representing the liability for failure to perform certain Government contracts. No deduction for liability on such contracts was ever claimed on any income tax return filed by petitioners, nor was the liability recorded on petitioners' records for 1951, although a balance sheet was prepared in 1953 reflecting the liability. On May 29, 1950, petitioner executed two contracts with the United States Army Engineers Corps, under which he contracted to deliver a specified number of railroad ties within a specified time at specified prices. For convenience these contracts are hereinafter referred to as contracts 1975 and 1980. The contracts provided, inter alia, that in the event of nonperformance or default by the petitioner, the Government could procure supplies or services similar to that contracted for and hold petitioner liable for any excess costs. On June 2, 1950, petitioner ordered the railroad ties which he had contracted to sell to the Government from Lucas Brothers Lumber Company, a corporation engaged in the manufacture of lumber in Sutherlin, Oregon. After making partial shipment of the railroad ties to petitioner, Lucas Brothers Lumber Company *62 refused to complete further shipment. Due to an increase in lumber prices petitioner was unable to secure other railroad ties at the Lucas contract prices. On November 29, 1950, petitioner wrote the Army Engineers Corps of his inability to deliver under the 1975 and 1980 contracts and requested that such contracts be terminated and that the material contracted for be purchased in the open market, any excess costs to be charged to petitioner. By letters dated December 14, 1950, the Army Engineers Corps notified petitioner that the contracts in question were terminated, that the material would be purchased in the open market, and that petitioner would be advised of the amount of any liability representing excess cost to the Government, including additional freight charges, if any, in procuring the material from other sources. At some time subsequent to December 14, 1950, and prior to April 12, 1951, the Army Engineers Corps secured from other sources the material covered by the defaulted 1975 and 1980 contracts, and incurred costs in excess of petitioner's contract prices. By letter dated April 12, 1951, the Army Engineers Corps notified petitioner that his liability for excess *63 cost incurred by the Government in securing the material covered by the 1975 contract was $8,562.66. Petitioner, by letter of May 7, 1951, replied that he did not understand the various charges, such as for freight and inspection, and stated further that the amount of $8,562.66 was far greater than he expected to pay when he was forced to terminate the contracts. By letter of May 23, 1951, the Army Engineers Corps wrote petitioner, explaining the freight and inspection charges about which petitioner had inquired. On May 31, 1951, petitioner wrote the Army Engineers Corps that he was still confused as to the explanation of some of the charges, stating further that his attorney was contacting Lucas Brothers Lumber Company and that in order to present petitioner's case to them further explanation would be needed. Petitioner stated that he acted as agent for Lucas Brothers Lumber Company and intended to work out the details with them. By letter of June 8, 1951, the Army Engineers Corps notified petitioner that his liability under the defaulted 1980 contract was $8,762.30. By letter of August 4, 1951, petitioner advised the Army Engineers Corps that the amounts claimed by the Government *64 were beyond his ability to pay; that at the time he defaulted on the contracts it was his understanding that the material could be purchased elsewhere for not more than $3,000 excess cost; and that he was trying to pass the claim on to Lucas Brothers Lumber Company and to recover at least a portion of the loss from them. Petitioner again raised questions relating to the correctness of certain charges and suggested the possibility of working out a compromise. After failure of the Army Engineers Corps in Portland, Oregon, to collect the excess costs on the 1975 contract, the entire matter was transferred to the Office of the Department of the Army, Washington, D.C., which office wrote petitioner on August 30, 1951, reaffirming the Government's claim of $8,562.66 under the contract and demanding payment. Petitioner made no reply to this letter. By letter dated August 29, 1952, the General Accounting Office, Claims Division, Washington, D.C., notified petitioner that his liability under the 1975 contract had been redetermined and reduced to $7,644.57. Petitioner made no reply or remittance in response thereto. Formal notice of liability of $7,644.57 and demand for payment was issued *65 to petitioner on March 24, 1953, by the Comptroller General of the United States. On February 4, 1952, the General Accounting Office, Claims Division, Washington, D.C., notified petitioner that his liability under the 1980 contract was $8,762.30. On July 25, 1952, after other demands for payment, a formal notice and demand for payment of the liability under the 1980 contract in the amount of $8,762.30 was made to petitioner by the Comptroller General of the United States. The amount of $16,406.87 claimed by petitioners as a deduction from their 1951 income is the aggregate of the claims made by the Government in the respective amounts of $8,762.30 and $7,644.57, as excess costs under the 1975 and 1980 contracts. Lucas Brothers Lumber Company has at all times failed and refused to pay petitioner any amount of the excess costs claimed by the Government from petitioner and has denied any liability therefor. At the time of the hearing of this proceeding no court action had been taken by petitioner to collect from Lucas Brothers Lumber Company. [Opinion] Petitioners contend that the aggregate amount of $16,406.87 claimed by the United States as excess costs arising out of the *66 breach of contract became a fixed and determined liability during the taxable year 1951 and was properly accruable for that year. The respondent contends that the alleged liability is not properly accruable by petitioners for 1951 because it was not fixed and determined in that year and was not unqualifiedly admitted by them, petitioners having repeatedly objected to the amount of the charge. It is well settled that a taxpayer may not accrue an item the amount of which is unsettled or the liability for which is contingent. Dixie Pine Products Co. v. Commissioner, 320 U.S. 516; Security Flour Mills Co. v. Commissioner, 321 U.S. 281. The record shows that at no time during the year 1951 did petitioner Rex Sorensen unqualifiedly admit his liability under the contracts nor the amount of the claims and demands made by the Government resulting from petitioner's failure to perform. It was not until the year 1952 that the Government readjusted its claim under the 1975 contract. Up to the time of the hearing of this proceeding the Government had instituted no suit to recover on its claims nor have any payments been made thereon or any compromise agreement entered *67 into. Other evidence indicating that petitioner did not admit his liability in any fixed and definite amount is shown by his statements to the effect that he was merely acting as agent and that the liability for the excess costs was that of Lucas Brothers Lumber Company. However, petitioner never pressed any such action. We are convinced, after a careful consideration of the record, that the amount of petitioners' liability to the Government was contingent in 1951 and still remains uncertain and undertermined. We therefore hold that petitioners were not entitled to accrue the amount of $16,406.87 in the taxable year 1951. The respondent's determination is sustained. Decision will be entered for the respondent.