**LANDERS, FRARY & CLARK**

v.

**The UNITED STATES.**

No. 95-53.

United States Court of Claims.
March 6, 1957.

Edward C. Park, Boston, Mass., for plaintiff.

H. S. Fessenden, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

■ 1. Plaintiff sustained a net loss in 1946. Under the Internal Revenue Code of 1939 it is entitled, under certain conditions, to carry back this loss to 1944 and 1945, and deduct it from its income for those years. In computing the loss in 1946 plaintiff claims it is entitled to take into account additional excess profits taxes asserted by the Revenue Agent to be due for the years 1942, 1943 and 1944. It says it can take these additional taxes into account in 1946 because, prior thereto, it had contested liability for them, but, after extended discussion with the Revenue Agent of the various items bringing about the additional taxes, and after seeing the Revenue Agent's report, it became convinced it owed the taxes the agent claimed it owed, and it consented thereto and agreed that they might be assessed and, indeed, paid the additional liability asserted. This agreement was in 1946. Since this was the first time the taxpayer had admitted liability for the additional taxes, plaintiff claims they accrued in that year.

■■ We think the taxpayer is correct. A liability accrues when it is asserted and agreed to by the person against whom it is asserted. Indeed, the creditor does not need to assert the liability, if the debtor recognizes it and treats it as such. For instance, a taxpayer is required to make a return of his income, and to compute the tax he thinks he owes. The amount of tax disclosed by the return accrues in the taxable year for which it is made.

This is true, although the Commissioner of Internal Revenue may later determine that the amount shown to be due is not enough or is too much. It is true although the taxpayer may decide later that he has paid too much and files a claim for refund.

It is true because the taxpayer recognized the liability. The Commissioner's concurrence therein was not necessary to accrue the liability for the amount recognized by the taxpayer.

■ If later the Commissioner asserts additional liability, which the taxpayer disputes in good faith, the additional liability does not accrue until the taxpayer finally consents to it; or, in the absence of consent, until it is authoritatively settled; but this does not prevent the accrual of a liability which the taxpayer recognizes and agrees to pay, as, for instance, the amount shown on the return.

This, we think, is in accord with the principle of United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347, and, more particularly, of Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 420, and Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725. In the case last cited the Court 321 U.S. at page 284, 64 S.Ct. at page 597, said:

"It is settled by many decisions that a taxpayer may not accrue an expense the amount of which is unsettled or the liability for which is contingent, and this principle is fully applicable to a tax, liability for which the taxpayer denies, and payment whereof he is contesting. Here the petitioner, in figuring its costs and its sales price to consumers, added the amount of the processing tax, but it collected its purchase price as such and designated no part of it as representing the tax. The petitioner received the purchase price as such. Its tax liability, if any, to the United States did not differ from other debts. Since it denied liability for, and failed to pay, the tax during the taxable year 1935, it was not in a position in its tax accounting to treat the Government's claim as an accrued liability. * * *"

It was the contest by the taxpayer that prevented accrual of the tax. So also in Dixie Pine Products Co., supra. When the taxpayer no longer contests, but admits liability, the tax then accrues.

In the case at bar, there was a genuine issue between the taxpayer and the Government's representative over the amount due, if any, and months of discussions were had between them. Finally, on April 23, 1946, the Revenue Agent came up with a definite figure and presented his computation to the taxpayer. The taxpayer consented to it and agreed that it might be assessed. This agreement was evidenced on form 874, promulgated by the Bureau of Internal Revenue for this purpose. On the same day the amount agreed to was paid.

In our opinion, liability for this amount of tax accrued when plaintiff agreed that it was liable for the amount asserted to be due.

It is true the Commissioner of Internal Revenue had not agreed to the amount computed by the Revenue Agent; but, for the liability to accrue, it is not necessary for the Commissioner to agree, no more than was it necessary for the Commissioner to agree to the amount shown on its return for that amount to accrue. In Lewyt Corporation v. Commissioner, 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029, the Supreme Court held that the amount of the tax shown on the return was the amount that accrued in the taxable year and not the amount finally determined to be due. The concurrence of the Commissioner of Internal Revenue is not necessary; it is the recognition of the liability by the taxpayer that causes the accrual.

Nor does the later filing of a claim for refund by the taxpayer asking for accelerated depreciation prevent the amount previously agreed to and paid from having accrued. It asserted a claim against the Government to recover a part of the amount agreed to and paid, but this did not entitle the taxpayer to get back any of the money paid until the dispute was settled. The dispute was not settled until the following year. After the claim was filed a Revenue Agent investigated it and allowed it in part, at least. He presented the taxpayer with form 873, on which the taxpayer could note its consent to the adjustment made. The taxpayer, presumably, signed this on December 2, 1946, but did not file it until January 17, 1947, and, hence, the dispute raised by the claim for refund was not settled before then.

Under our decision in Consolidated Edison Co. of New York v. United States, 135 F.Supp. 881, 133 Ct.Cl. 376, certiorari denied 351 U.S. 909, 76 S.Ct. 694, 100 L.Ed. 1444, the filing of a claim for refund would not affect the accrual of the liability, since the liability was paid, and thereby discharged, in the year it accrued. See also Chestnut Securities Co. v. United States, 62 F.Supp. 574, 104 Ct.Cl. 489.

We think plaintiff, in computing its loss for 1946, is entitled to take into account the additional liability asserted by the Revenue Agent and agreed to by it and paid by it.

■ 2. Defendant says that plaintiff is not entitled to add to its operating loss for 1946 the amount of the additional excess profits taxes for 1942, 1943 and 1944, liability for which it acknowledged in 1946, and which it paid in 1946, because in its claims for refund, asking that its operating loss for 1946 be carried back to prior years, it did not refer to the additional taxes for 1942, 1943 and 1944.

This is an untenable position.

The claim filed on January 6, 1947 asking for a refund of income taxes for the calendar year 1944 read:

"The taxpayer claims a refund of 1944 normal tax and surtax as a result of a carry-back of 1946 net operating loss, totalling $1,115,000, or such other amount as is proper * * *."

The taxpayer did not undertake to indicate how he thought the 1946 net operating loss ought to be computed. He merely claimed a carry-back of the net operating loss in the amount of $1,115,-000, "or such other amount as is proper." This required the Commissioner of Internal Revenue to compute the "proper" amount of the 1946 operating loss. Since we have held above that the liability for the additional taxes for 1942,

1943 and 1944 accrued in the year 1946, it was necessary for the Commissioner of Internal Revenue to take into account this additional liability in computing the net operating loss for 1946. It was not necessary for the taxpayer to specifically refer to additional taxes paid for 1942, 1943 and 1944.

The claim filed on January 6, 1947 for the calendar year 1945 was to the same effect.

Subsequently, the taxpayer filed other claims for refund of income and excess profits taxes for 1944 and 1945 based upon the carry-back of the net operating loss for 1946, and on other grounds, but in these claims also it asked for the refund of a stated amount or such other amount as was proper.

In any event, the claims filed on January 6, 1947, put the Commissioner of Internal Revenue on notice of what the taxpayer was claiming, and made it necessary for him to make a computation of the proper amount of the loss for 1946, and this could only be done, in our opinion, by including therein the liability for additional taxes for the years 1942, 1943, and 1944.

■ On December 6, 1948 the taxpayer filed a further claim for refund of Federal income taxes for the calendar year 1944. In this one it made specific claim for the inclusion in its net operating loss for 1946 of the additional excess profits taxes consented to and paid for the years 1942, 1943, and 1944. However, on September 22, 1949, the taxpayer wrote the Commissioner agreeing to the disallowance of this claim. This, however, does not foreclose the taxpayer from asserting the claim it now makes in this suit, as the defendant in its brief admits. Just why the taxpayer agreed that this claim should be disallowed, we do not know, but, at any rate, its claims of January 6, 1947 were still before the Commissioner of Internal Revenue, unacted upon, and these claims afford sufficient basis for the present suit.

■ 3. The next issue raised by the pleadings is the computation of interest on the refunds to which plaintiff was entitled for the overpayment of excess profits taxes for 1944 and 1945. The plaintiff claims interest from January 6, 1947, the date it filed its claims for refund asking for the carry-back of its 1946 loss to the years 1944 and 1945. The Commissioner of Internal Revenue computed interest from May 6, 1947, the date plaintiff filed its return for 1946.

Section 3771 of the Internal Revenue Code, 26 U.S.C.A. § 3771 provided for interest on an overpayment of internal revenue tax at the rate of 6 percent per annum from the date of the overpayment. Under subsection (e) of section 3771, as that subsection read prior to its amendment by the Tax Adjustment Act of 1945, it was provided that—

"No interest shall be allowed or paid with respect to such part of the overpayment [attributable to the carry-back of a net operating loss] for any period before the filing of a claim for credit or refund of such part of the overpayment * * *."

The general provision of section 3771 was that interest was allowable on an overpayment "from the date of the overpayment;" but, with respect to an overpayment attributable to the carry-back of a net operating loss for a subsequent year, subsection (e) excluded the period from the date of the overpayment to the date of the filing of a claim for refund. But under the law as it then was, there is no doubt that plaintiff was entitled to interest from the date of the filing of the claim for refund. We so held in Virginia Electric & Power Co. v. United States, 126 F.Supp. 178, 130 C.Cl. 189.

The Tax Adjustment Act of 1945, 59 Stat. 517 amended subsection (e) of section 3771 so as to add the following:

"* * * nor for any period beginning with the date of filing of an application under section 3780(a) relating to such part of the overpayment and ending with the last date the Commissioner's determination is required to be made under section 3780(b); nor, in case an application

is made under section 3780(a), for any period before the first day of the month immediately following the month in which falls the last date prescribed by law * * * for filing the return for the taxable year of the net operating loss or unused excess profits credit, or before the date on which the return is filed, whichever is later."

Section 3780(a), 26 U.S.C.A. § 3780(a) to which the amendment refers, allowed a taxpayer to "file an application for a *tentative* carry-back adjustment of the taxes for prior taxable years affected by a net operating loss carry-back." [Italics ours.] Section 3780(b) required the Commissioner of Internal Revenue, *within 90 days* from the filing of such an application, or, roughly, *within 90 days* from the filing of the return for the year the net operating loss was sustained, to make "a *limited* examination of the application, to discover omissions and errors of computation therein, and [to] determine the amount of the increase or decrease in each tax attributable to such carry-back upon the basis of the application and the examination * * *." [Italics ours.]

It seems clear that the claims for refund filed by the plaintiff on January 6, 1947 were not applications under section 3780. In that claim it did not ask for a "tentative" carry-back to prior years. They were unqualified claims for refund of all taxes overpaid for the years 1944 and 1945. It contemplated detailed examination and allowance of, not a tentative carry-back, but all the carry-back to which the taxpayer was entitled under the law.

Since no application was made by the plaintiff for a tenative carry-back adjustment, under section 3780, the provisions of section 3771(e) relating to the computation of interest on an overpayment, where an application is made for tenative carry-back adjustment under section 3780, has no application.

This takes us back to the statute as it was before the amendment was made by the Tax Adjustment Act of 1945. The statute then provided for interest on an overpayment from the date the claim for refund was filed.

Now, it is said that the defendant was not in position to determine the net operating loss carry-back until after plaintiff had filed its return, and that, therefore, the Government should not be penalized by having to pay interest prior to the date the return was filed. But the law does not refer to the date of the filing of a return; it refers only to the date of the filing of a claim for refund, and does not prohibit its filing before the return is filed.

From the last day of the year in which the plaintiff had sustained a net operating loss, the Government had more of plaintiff's money than it was entitled to, and on this date plaintiff became entitled to carry it back to a prior year and thus reduce its taxes for that year; hence, it should pay interest from that date. But the statute excepts therefrom the period between the date of the overpayment and the date the claim for refund was filed, and plaintiff only claims a refund from the date the claim for refund was filed. This we think it is entitled to.

4. Defendant concedes that plaintiff is entitled to. interest on the overpayment of excess profits taxes for 1944 and 1945 from the date of the overpayment to the date of the assessment of the deficiency.

Plaintiff is entitled to recover in accordance with the foregoing opinion. Judgment will be entered to this effect. The amount of recovery will be determined under Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN, and LITTLETON, Judges, concur.