### BARTLETT v. DELANEY.

### ALLEN v. BUCKLEY.

### SAME v. DELANEY.

Civil Actions Nos. 6264, 6262, 6263.

District Court, D. Massachusetts.
Jan. 22, 1948.

Edward C. Thayer and E. Barton Chapin, both of Boston, Mass., for plaintiffs.

Fred S. Gilbert, Sp. Asst. to the Atty. Gen., for defendants.

WYZANSKI, District Judge.

These three companion cases tried upon a stipulation of facts raise a single common issue of law and can be disposed of in one opinion referring specifically to the third numbered case.

Elmer H. Bartlett is a taxpayer keeping his accounts on a cash basis and using the calendar year as his accounting period. In 1937 he received certain shares of stock. In computing his individual liability for federal income tax for that year he did not report the value of those shares as he regarded them as not constituting taxable income. In 1942 the Commissioner, viewing that 1937 transaction as a receipt of a taxable dividend, determined that there had been a deficiency in the 1937 tax.

In 1942, after the taxpayer had filed a waiver pursuant to § 272 (d) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 272 (d), the Collector assessed and collected from him a deficiency tax of $3,417.97 and interest thereon of $809.96 making a total of $4,227.93. In reporting his tax for the year 1942 the taxpayer deducted from gross income the $809.96 as interest paid.

A judgment rendered in a parallel case in 1942 determined that shares such as those received by the taxpayer in 1937 were not taxable income to the recipients. In 1942 the taxpayer filed a claim for refund of the $4,227.93 together with interest. In 1943 the United States refunded to the taxpayer the $4,227.93 together with $340.22 as interest. In reporting his tax for the year 1943 the taxpayer included as interest received the $340.22 and also the $809.96 which constituted part of the $4,227.93.

September 7, 1944 the taxpayer filed upon form 843 a claim for refund for the income tax "period * * * Jan. 1, 1943 to Dec. 31, 1943." In his claim he asserted "that in view of the fact that his income tax liability for the calendar year 1942 remains open for adjustment, the inclusion in his interest income for the year 1943 of said amount of $809.96 was erroneous, and that the tax thereon was illegally computed." The claim then proceeded to submit computations eliminating $809.96 from the deductions taken in the 1942 return and also the receipts shown in the 1943 return. These computations showed the taxpayer entitled to a refund of $214.40 together with inter-

est. The Collector took no action to allow the refund claim within the six months' statutory period. December 26, 1946, the taxpayer brought this suit against the Collector.

Succinctly the issue is whether a taxpayer keeping his accounts on the cash basis who (1) in his income tax return for 1942 took a deduction for interest paid that year on account of a tax which he was contesting, and (2) in his income tax return for 1943 included as gross income a refund of that interest made that year, can in 1944 require the Collector (1) to allow the taxpayer to recompute his two tax returns by eliminating from the 1942 return the originally claimed deduction of interest and from the 1943 return the originally reported receipt of a refund, and (2) upon the basis of that recomputation to make a refund of taxes paid on account of 1943 income.

In supporting the affirmative, the taxpayer makes these contentions. Income tax accounting ought to be made on the basis of true income. The true situation is that the taxpayer owed no interest in 1942 and should not have been forced to pay it. The government admitted this when it made a refund in 1943. Elimination of both the 1942 payment and the 1943 refund would show the true economic picture. It would avoid distortions in tax accounting. It is permissible as a matter of law because the true facts appeared to the government and the elimination was proposed by the taxpayer before the statutory period had elapsed in which the government could make for 1942 and 1943 deficiency determinations under 26 U.S.C.A. Int.Rev.Code, § 272 and refunds and credits under 26 U.S.A. Int.Rev.Code, § 322. And such elimination is like that upon which the government's officer, the Commissioner, successfully insisted in Cooperstown Corp. v. Commissioner, 3 Cir., 144 F.2d 693; Inland Products Co. v. Blair, 4 Cir., 31 F.2d 867; Leach v. Commissioner, 1 Cir., 50 F.2d 371; Bohemian Breweries, Inc. v. United States, 27 F.Supp. 588, 89 Ct.Cl. 57; Stimpson Inv. Corp. v. United States, D.C.Mass., 35 F. Supp. 498; Eckstein v. Commissioner of Internal Revenue, 41 B.T.A. 746.

In supporting the negative, the Collector argues as follows: The income tax laws establish strict period of annual accounting as shown by §§ 41, 42 and 43 of the Revenue Act of 1938, c. 289, 52 Stat. 447, 473, 26 U.S.C.A. Int.Rev.Code, §§ 41, 42 and 43, and by Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725 and Burnet v. Sanford & Brooks Co., 282 U.S. 359, 363, 51 S.Ct. 150, 75 L.Ed. 383. The taxpayer had the right under § 23 (b) of the Internal Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Code, § 23 (b), to take in his 1943 return a deduction for interest paid. When the taxpayer received in 1943 a refund of that interest the refund became part of the gross income reportable for the year 1943, in accordance with the doctrine enunciated in Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 298, 67 S.Ct. 271. If the taxpayer is now allowed to reopen his 1942 return and eliminate the deduction and to reopen his 1943 return and eliminate the refund the consequences will be a departure from the rule of strict annual accounting, an opportunity to the taxpayer to manipulate his returns to his own advantage and the government's disadvantage, and an imposition upon the government of a burden of searching past returns. To allow such a course will, according to the Collector, offend the rules laid down in Freihofer Baking Co. v. Commissioner, 3 Cir., 151 F.2d 383; Helvering v. Cannon Valley Milling Co., 8 Cir., 129 F.2d 642; Victoria Paper Mills Company v. Helvering, 2 Cir., 83 F.2d 1022, affirming 32 B.T.A. 666; and Baltimore Transfer Co. v. Commissioner, 1947, 8 T.C. 1.

In resolving these contentions, I turn first to the tax return for 1943, since the ultimate question presented at bar is whether this Court should enter a judgment requiring the Collector to make a refund of the tax paid for that year.

▪▪▪ When he made his original return for 1943 the taxpayer included in his gross income an item of $809.96 on account of a refund made that year of interest paid in 1942 and deducted in the 1942 return. If the taxpayer had not made the deduction in 1942 it would have been in accordance with law for him not to have included the re-

fund in his 1943 return. Spencer v. Maloney, D.C.Or., 73 F.Supp. 657, 660, 662. When a taxpayer receives in a second year a refund of an expenditure made in a previous year that refund is a return of capital unless he has retained some advantage from the initial expenditure. This is true whether the refund be a return of interest paid, taxes paid, or the purchase price of goods returned. So long as no advantage is retained as a result of the initial transaction the refund is from an economic and from a tax viewpoint a return of capital, not "gross income." It is not taxable under the Sixteenth Amendment. It is not within the asserted reach of § 42 or any other section of the Revenue Act of 1938. But since, when he filed his 1943 tax return, the taxpayer, exercising the option given him by § 23 (b), had claimed a deduction of $809.96 in his 1942 return, and no change had been made by anyone in that return, he was not entitled at the time he made the original 1943 return to omit the refund of the $809.96. He had retained an advantage from the original expenditure. Therefore, the refund constituted gross income taxable under the Sixteenth Amendment and under the revenue laws. Rothensies v. Electric Storage Battery Co., 329 U. S. 296, 298, 67 S.Ct. 271.

But the taxpayer in 1944 filed a claim for refund of 1943 taxes in which he made proposed recomputations of taxes for both 1942 and 1943. In these recomputations he sought to eliminate the payment of interest in 1942 and the receipt of a refund of interest in 1943. He sought to be in the position of one who having retained no advantage from the original expenditure in 1942 could regard the repayment in 1943 as a return of capital.

To succeed in his objective the taxpayer has to overcome four hurdles. He has to show first, that he has a right to file an amended 1942 return eliminating the deduction for interest which he originally claimed; second, that he has a right to compel the government or its appropriate officials to accept cash or credit on account of the additional tax liability shown in the amended return; third, that he has in the case at bar followed the correct procedure (a) to amend his return and (b) to compel the acceptance of the cash or credit he tendered; and fourth, that after properly surrendering or offering to surrender all advantages which accrued to him from the original claim of deduction he is entitled by a refund claim to procure a refund of his tax for 1943 by eliminating the $809.96 refund from the gross income originally reported for 1943.

The revenue acts have consistently given to the taxing authorities a statutory power to reopen within prescribed periods of time a taxpayer's return for the purpose of determining a deficiency, 26 U.S.C.A. Int. Rev.Code, § 272, or of allowing a refund or credit, 26 U.S.C.A. Int.Rev.Code, § 322. There is no parallel statutory provision giving to a taxpayer a right to reopen and amend a return after he has filed it and after the date it was due. However, there is an established administrative practice under which, without securing special permission, a taxpayer after filing an original return and even after the due date may file an amended return. To understand this point takes a word of explanation. Section 271 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 271, as originally enacted by Act of May 28, 1938, c. 289, § 271, 52 Stat. 534 and as continued through the taxable year ending December 31, 1942 [see § 14 (a) and (c) of Act of May 29, 1944, c. 210, 58 Stat. 231, 245, 246, 26 U.S.C.A. Int.Rev.Code, §§ 271, 292 (a)], defined, and established rules for applying, a "deficiency." Section 272 of the Code, 26 U.S.C.A. Int.Rev.Code, § 272, provided means for collecting a deficiency. Interpreting Section 271, the Bureau issued Regulation 111, § 29.2711 stating that: "Additional tax shown on an 'amended return,' so-called, filed after the due date of the return for the taxable year, is a deficiency within the meaning of the Code." From this interpretative definition it follows that the administrative authorites do recognize that a taxpayer has the right to file an amended return without securing special executive permission in each case.

■ But the administrative practice recognizing the right of a taxpayer to file

494

an amended return does not automatically imply an administrative practice recognizing the corelative right of a taxpayer to compel the government or its appropriate officials to accept cash or credit on account of an additional tax liability shown on the amended return. Nothing in the statute, in Regulation 111 or in any other official document refers to such a corelative right. So far as appears from the statutes and regulations if the taxpayer tenders an amended return to the Collector, he and the Commissioner remain free to add or not to add the taxpayer's newly disclosed obligation to the tax assessment roll. So far as appears from the statutes and regulations if the taxpayer tenders with his amended return cash, or a check or an offer of credit against other taxes, the Collector and the Commissioner remain free to accept or refuse the tender. But it may be proposed that even though nothing appears in the letter of the law, the taxpayer has an enforceable right to compel the appropriate governmental official to receive such tender when its receipt is in the taxpayer's eyes of concern to him. There are numerous difficulties in such a proposal. While the Collector and the Commissioner may owe the government a judicially enforceable obligation to collect a tax that is due, do they owe a like judicially enforceable obligation to the indiviual whose tax is due? If so, is it an absolute and unqualified obligation or has the taxgatherer a discretion not to collect a tax that is due when his view is that collection would be disadvantageous to the government either because it would subject the government to other liabilities, or because it would entail more paper-work than the tax would pay for, or because it would in the government's view create a weaker background for a suit for a penalty or a criminal prosecution, or because it would allow a taxpayer who once deliberately chose another method of reporting income an opportunity to avoid his election when he found it embarrassing, or because it would complicate annual accounting? If the taxgatherer has discretion is it unfettered, or must he state the grounds for its exercise, and if he fails to state a ground which meets the approval of a court, is his exercise of discretion to be set aside judicially? If there is a judicially enforceable obligation when does the taxpayer's right of action mature and what is the period of its limitation? Answers to some of these questions may be individually relatively easy; yet taken collectively these questions raise problems sufficiently difficult for me to conclude that until Congress enacts relevant legislation a court has no power to require a Collector or Commissioner to accept from a taxpayer an additional tax payment or tax credit upon the basis of an amended return filed by the taxpayer after the due date. Nor has a court any power to review the action of a taxgatherer in refusing to accept cash, a check or a proferred tax credit. The taxgatherer has, so far as concerns the courts and the taxpayer, an unlimited discretion. Courts will not examine the taxgatherer's reasons or lack of reasons.

Moreover, even if the taxgatherer's failure to accept a proffer of cash, a check or a tax credit, were subject to judicial scrutiny at the suit of a taxpayer, this taxpayer seems not to have taken appropriate steps to secure that review. He did not file an amended 1942 return accompanied by cash, a check or a tender of credit; he merely filed a claim of refund of 1943 taxes in the course of which he made a recomputation. When that claim was rejected he did not bring an equitable action or mandamus against the Commissioner; he merely sued the Collector. And he sued him at law seeking merely a refund of 1943 taxes. To allow such indirect enforcement of the asserted obligation presents peculiarly embarrassing problems particularly where there is involved a tax paid more than four years before this suit was brought.

The foregoing analysis distinguishes the cases relied on by the taxpayer, such as Cooperstown Corp. v. Commissioner, supra; Leach v. Commissioner, supra; Bohemian Breweries v. United States, supra; Stimpson Inv. Corp. v. United States, supra; Inland Products Co. v. Blair, supra; Eckstein v. Commissioner, supra. In some of those cases the background re-

sembled the case at bar: that is, a taxpayer claimed in his return for one year a deduction of an item paid that year, and in a subsequent year when the amount was refunded he included the refund in his return for that subsequent year. But the party seeking to eliminate the item from both returns and to make the appropriate refund and determination of deficiency was in those cases [and in all others I have found except two, Hoboken Land & Improvement Co. v. Commissioner, 3 Cir., 1943, 138 F.2d 104; E. B. Elliott Co. v. Commissioner, 45 B.T.A. 82] the Commissioner, not the taxpayer. The Commissioner is admittedly a person having statutory powers to determine deficencies and to make assessments and collections. He therefore is not faced with what I have called the second and third hurdles in this case.

■ Moreover, procedural distinctions and difficulties aside, I conclude that as a matter of substantive law the taxpayer is not entitled to make the alterations he desires in his tax returns for 1942 and 1943. I do not go so far as to say he is precluded by the precise holding in Security Mills Co. v. Commissioner, 321 U. S. 281, 286, 64 S.Ct. 596, 598, 88 L.Ed. 725. However, I regard the recent decisions of the Tax Court and of Circuit Courts of Appeal which the government cites and to which I referred in summarizing the Collector's contentions as correctly concluding that the Security Mills case has overtones beyond its ratio decidendi. I place considerable weight upon the reiteration in that case of the familiar rule that "It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation."

The fundamental justifications of annual accounting are that when every taxpayer is subject to it the government has a basis for calculating anticipated revenue and relying upon collected revenue, and that there are clearly defined times for determining the classification and treatment of particular items. This broad approach tends to look absurd when one focuses on a single individual's payment of $809.96 interest. And yet enough little variations from the general principle of annual accounting might have extraordinary effects. And Congress by §§ 41, 42, and 43 of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Code, §§ 41, 42, and 43 has emphasized the annual accounting principle not only in the sense of annual intervals of reporting receipts and expenditures but also in the sense of annual determinations of the tax nature of particular items of receipt and expenditure.

■ Moreover, this is by no means an unsuitable case for applying the principle of annual accounting. Annual accounting has these aspects: (1) Annual allocation of items to particular years; (2) annual classification of items as capital, income and the like; and (3) annual computations, returns and payments of tax. It is the second aspect which this taxpayer seeks to ignore. He now seeks to call the expenditure he made in 1942 not a payment of interest but a loan of capital. And he makes this new classification solely on the basis of the fact that the $809.96 was returned to him in 1943. He thus seeks to use a fact unknowable to him in 1942 as an element in preparing a return for 1942. It is an attempt to carry part of the 1943 picture back into the 1942 picture. This is not hindsight, but squinting.

The argument that courts ought to allow departures from the principle of annual accounting whenever such departures would more nearly reflect true income is an argument that proves too much. After all, income tax returns filed upon an annual accounting system particularly by taxpayers on a cash basis will never reflect with complete accuracy what an economist or accountant would call true income. Taxes are not collected, or probably collectible, upon the basis of such complete theoretical accuracy. To a certain extent the taxpayer must lie in one type of Procrustean bed or another although he may choose among several different models.

Admittedly there are devices for avoiding some of the rigors of that Procrustean

annual accounting system, and some of those devices are surprisingly close to the case at bar. Consider, for example, a supposititious taxpayer who found himself in 1942 in the position of the plaintiff at bar and who decided that he would not claim in his original return a deduction for interest paid, but instead would wait for 2 years and 11 months to see whether he secured a repayment of the interest, and if by then he had not secured a repayment would plan to file a refund claim pursuant to 26 U.S.C. Int.Rev.Code, § 322 (b). A taxpayer of such astuteness and endurance could by his inaction avoid the plaintiff's dilemma. And it may seem inequitable to treat more harshly this more candid plaintiff, whose ·conduct involves no appreciably greater burden on the government, no greater uncertainty as to the revenue produced by taxation, no more opportunity for manipulation and no wider departure from annual accounting. It is even rather difficult to say that the supposititious taxpayer unlike the plaintiff has made no election—for · the supposititious taxpayer also made an election when he filed his return without claiming an interest deduction. Perhaps in the end the only differences between the two cases are first, that the revenue laws spell out a fixed period in which the supposititious taxpayer must come to a conclusion, but do not spell out any period for taxpayers like the one at bar; and second, that the supposititious taxpayer is a rara avis—most men who don't promptly claim deductions act in ignorance not with deep dyed design, and so the law out of an abundance of generosity gives them a fixed period to wake from their slumber. Taxpayers in the plaintiff's class make a conscious, overt choice—perhaps not a shrewd and nicely calculated one. Judges taught by their daily work the value of statutes of limitations and like rules of repose and mindful of the harassment incidental to constant changes of position are perhaps more sympathetic than laymen with a doctrine which requires taxpayers in· the plaintiff's position to stand upon their choice rather than to have for a future of unspecified length possibilities of readjustments of tax returns in the light of better opportunities disclosed by the passage of time. Cf. Ben Bimberg & Co., Inc. v. Helvering, 2 Cir., 126 F.2d 412. In short, the initial choice which is affirmatively shown on the face of the tax return should be treated as a binding election not because the government relied on that particular choice but because the government may rely to some extent upon the affirmative choices expressed by the total number of taxpayers in the total number of returns and because where a man makes a deliberate and disclosed choice the law favors a policy of repose except where Congress provides otherwise and sets the exact period during which the door remains open for changes of approach.

Judgment for defendants in all three cases. ·