814

The **PHILADELPHIA SAVING FUND SOCIETY**

v.

**UNITED STATES of America.**

Civ. A. No. 21151.

United States District Court
E. D. Pennsylvania.

Sept. 25, 1958.

Charles J. Biddle, Philadelphia, Pa., for plaintiff.

Harold K. Wood, U. S. Atty., Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is a suit to recover federal income taxes in the amount of $139,200.33, alleged to have been erroneously assessed, paid by the plaintiff for the year 1952. All of the relevant facts appear in a stipulation. Both parties have filed motions for judgment on the pleadings or for summary judgment.

The stipulation is, in substance, as follows: The plaintiff is a mutual savings bank whose deposits are insured under the Federal Deposit Insurance Act (12 U.S.C.A. § 1811 et seq.). It files its income tax returns and keeps its books on the accrual basis. Under Section 7(a) of such act the plaintiff must pay to the Federal Deposit Insurance Corporation each year an assessment at the rate of one-twelfth of one per cent of its deposit liability. Section 7(d) of the act requires that from such assessments received from insured banks the Federal Deposit Insurance Corporation must pay operating costs and losses, leaving a "net assessment income", sixty per cent of which must be credited pro rata to each insured bank after the close of the year. In 1952, there accrued to the plaintiff in this manner a credit in the amount of $281,782.05, based on the as-

sessment it paid to the Federal Deposit Insurance Corporation in 1951. Mutual savings banks were not subject to federal income tax in 1951. In its return for 1952 (the first year for which such mutual savings banks were subject to tax) the plaintiff did not include the amount of such credit in its gross income.

The Commissioner determined that the credit was taxable income for the year 1952, and the plaintiff paid the additional tax, filed claim for refund and brought this suit, contending that since there was no tax in 1951 it got no tax benefit from the assessment which might have been deducted as a business expense had there been any income tax in that year and that the assessment credit, therefore, constituted a recovery of an expenditure which had not reduced its taxable income and was a nontaxable return of capital rather than taxable income.

The tax benefit rule, as embodied in the taxing statutes, upon which the plaintiff bases its position in this case had its origin in the recognition of the hardship involved in the decisions of some courts to the effect that bad debt recoveries constitute taxable income regardless of the tax benefit from the charge-off. It was enacted into law in Section 22(b) (12) of the 1939 Internal Revenue Code, 26 U.S.C.A. § 22(b) (12) (in force for the year involved here). This section provided that income attributable to the recovery of a "bad debt, prior tax, or delinquency amount" which in the year of its occurrence did not result in a reduction of the taxpayer's tax should be excluded from the taxpayer's gross income. In 1944 the Commissioner adopted a regulation (Reg. 111 Sec. 29.22(b) (12)–1) applying the rule of exclusion prescribed by the statute to "all other losses, expenditures, and accruals made the basis of deductions from gross income for prior taxable years * * *." Later on, in 1955, he issued a ruling (Rev. Rul. 478, 1955–2 C.B. 18) applying specifically to Federal Deposit Insurance Corporation's credits to mutual savings banks such as the plaintiff, stating that such credits constitute taxable income and that they "do not represent recoveries of any particular expenditures made in years beginning prior to December 31, 1951."

If this ruling correctly states the law, the Commissioner did not err when he determined that the plaintiff's 1952 credits constituted taxable income.

■ Of course, a ruling by the Commissioner does not, like a regulation, have the effect of law, but this ruling was a general one interpreting one of the Commissioner's own regulations and it certainly amounts to a statement of what he understood and intended the limitation of the scope of Regulation 111 to be, namely, that it did not apply to mutual savings banks so far as Federal Deposit Insurance Corporation credits were concerned.

The plaintiff argues that this ruling of the Commissioner "is completely contrary to the principles previously followed by the Treasury and established by the courts, including the United States Supreme Court in the Dobson case"[1]. I believe, however, that the plaintiff has not interpreted correctly the scope of the Dobson decision. What the Court decided in that case, and the only thing that it decided, was that the fact finding tribunal (in that case, the Tax Court) was free to find as a fact that the recovery of a prior loss (in that case through a third party's fraud) was not taxable income and that in arriving at that conclusion the Tax Court's decision to the effect that, regarding the series of transactions as a whole, no gain to the taxpayer was actually realized was "no more reviewable than any other question of fact". The Court said "In determining whether the recoveries were taxable gain, however, the Tax Court was free to decide for itself what significance it would attach to the previous reduction of taxable income as con-

1. Dobson v. Commissioner, 1943, 320 U.S. 489, 64 S.Ct. 239, 249, 88 L.Ed. 248.

trasted with reduction of tax". The Court, however, made it doubly clear that the question was one of proper tax accounting, that is, of fact and not of law, saying "we are not adopting any rule of tax benefits. * * * The error of the Court below" (that is, the Court of Appeals, which reversed the Tax Court) "consisted of treating as a rule of law what we think is only a question of proper tax accounting". The logic of the opinion is such that the Supreme Court would have sustained the Tax Court whichever way that Court had decided the question of the existence of taxable income.

■ Entirely apart from the Commissioner's ruling quoted above, I am of the opinion that in the present case, as a matter of fact, the 1952 credits constitute taxable income for that year and that they are not recoveries of overpayments of deposit insurance assessments nor specific reductions of any particular assessments.

The transactions wherein the 1951 assessment was calculated and paid and the 1952 assessment was calculated and paid in cash and by a credit received in that year were separate transactions even though the 1952 credit was calculated on the basis of the 1951 net assessment income of the Federal Deposit Insurance Corporation. If the credit has been the return of an overassessment erroneously made, its allowance might have been considered a "recovery" of a part of an expenditure made in 1951 and the assessment and subsequently allowed credit could have been viewed as steps in a single transaction occurring, for tax accounting purposes, in 1951. However, the 1951 assessment was not erroneous, nor, although the credit resulted in economic gain to the taxpayer in 1952, could it be called a "recovery" of money paid by it. There was no certainty that any credit would be received. The bank could not transfer it or realize upon it or avail itself of it in any way except for the single limited purpose of reducing the payments required of it in 1952, that is, the year following that in which the assessments were made and the premiums paid. The assessment in 1951 was, of course, paid partly in cash and partly by credit calculated on the basis of prior years.

Although, had there been any tax in 1951, the bank might have deducted the payment of its assessment for that year as a business expense, it cannot be said that it incurred a loss when it paid its 1951 assessment. It bought and paid for something of value to it in its business, namely, the status of an insured bank. The assessments are not tentative assessments nor, except upon an uncertain contingency, does the law require the return of any part of the premium. Only if the Federal Deposit Insurance Corporation operated in such a manner that its assessment income exceeded its expenses and losses was it obliged to credit 60% of this profit to member banks.

I cannot say that the plaintiff has established that the Commissioner was in error when he required the plaintiff (as well as mutual savings banks in general) to treat the credit as income for the year when it was actually granted. This accounting procedure seems to me to be perfectly proper. The same result would be reached if the credit, instead of being treated as income, were regarded as a reduction of the 1952 assessment and only the amount actually paid by the bank were considered a business expense. To treat the credit received as a reduction of the prior year's expenses seems to me to be contrary to the intent of Congress when it limited the application of the credit it granted to the reduction of the next year's assessment. Regardless of the bookkeeping techniques involved, this is what actually happens, because the bank actually parts with only the difference between the assessment and the credit allowed during any one year.

The motion of the plaintiff is denied, and the motion of the defendant is granted. Judgment may be entered for the defendant and against the plaintiff.