PHILADELPHIA SAVING FUND SO-
CIETY, Appellant

v.

UNITED STATES of America.

No. 12773.

United States Court of Appeals
Third Circuit.

Argued Feb. 17, 1959.

Decided July 20, 1959.

Rehearing Denied Sept. 22, 1959.

BIGGS, Chief Judge, J., dissented.

Charles J. Biddle, Philadelphia, Pa.
(Frederick E. S. Morrison, Calvin H.
Rankin, Ernest L. Nagy, Drinker Bid-
dle & Reath, Philadelphia. Pa., on the
brief), for appellant.

J. Dwight Evans, Jr., Washington, D.
C. (Charles K. Rice, Asst. Atty. Gen.,
Lee A. Jackson, I. Henry Kutz, Attys.,
Dept. of Justice, Washington, D. C., Har-
old K. Wood, U. S. Atty., Philadelphia,
Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and
McLAUGHLIN and KALODNER, Cir-
cuit Judges.

KALODNER, Circuit Judge.

Plaintiff taxpayer brought this action
to obtain a refund of federal income tax-
es paid with respect to its taxable year
1952. The facts being stipulated, both
parties filed motions for summary judg-
ment. The District Court entered judg-
ment, via its Order, for the United

States,[1] and the taxpayer took this appeal.

The issue presented for determination is whether the District Court erred in its holding that a credit received by the taxpayer, a mutual savings bank, from the Federal Deposit Insurance Corporation in 1952, when the taxpayer first became subject to federal income taxation, is taxable income for that year.

The taxpayer contends that the credit when allowed in 1952 constituted a return to it of a portion of its assessment paid in 1951, and was a nontaxable recovery because it received no tax benefit from the payment of its 1951 assessment. The United States contends that the credit did not represent an adjustment for overpayment, nor was it a specific reduction of any particular prior assessment; hence, the credit was income within Section 22(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 22(a).

The facts are as follows:

The taxpayer is a mutual savings bank whose deposits are insured by the Federal Deposit Insurance Corporation ("FDIC") under the Federal Deposit Insurance Act, 64 Stat. 873, 12 U.S.C.A. § 1811 et seq. Insofar as relevant here, the taxpayer keeps its books and files its tax returns on a calendar year, accrual basis. Section 7(a) of the Federal Deposit Insurance Act, 12 U.S.C.A. § 1817(a), fixes the assessment to be paid to the FDIC by an insured bank at one-twelfth of one per cent of its "deposit liability", determined in accordance with the provisions of the Act. Section 7(d) of the Act, 12 U.S.C.A. § 1817(d), provides for a credit from the "net assessment income," as of December 31,—annually, of the FDIC to be applied toward the payment of the semi-annual assessment period beginning the next July 1, any excess credit being applicable to the payment of ensuing assessments.[2] Thus, the credit is computed and made available to insured banks in the following calendar year to use in payment of future assessments, or if an insured bank ceases to be insured, the amount is paid in cash.

On January 15, 1951, the taxpayer, paid to the FDIC the semi-annual assessment due for the six months ending June 30, 1951, of $247,442.48, which it paid by check.

On June 20, 1951, there was placed to taxpayer's credit[3] by the FDIC, pur-

1. The District Court's opinion is reported at D.C.E.D.Pa.1958, 167 F.Supp. 814.

2. "(d) As of December 31, 1950, and as of December 31, of each calendar year thereafter, the Corporation shall transfer 40 per centum of its net assessment income to its capital account and the balance of the net assessment income shall be credited pro rata to the insured banks based upon the assessments of each bank becoming due during said calendar year. Each year such credit shall be applied by the Corporation toward the payment of the total assessment becoming due for the semiannual assessment period beginning the next ensuing July 1 and any excess credit shall be applied upon the assessment next becoming due. The term 'net assessment income' as used herein means the total assessments which become due during the calendar year less (1) the operating costs and expenses of the Corporation for the calendar year; (2) additions to reserve to provide for insurance losses during the calendar year, except that any adjustments to reserve which result in a reduction of such reserve shall be added; and (3) the insurance losses sustained in said calendar year plus losses from any preceding years in excess of such reserves. If the above deductions exceed in amount the total assessments which become due during the calendar year, the amount of such excess shall be restored by deduction from total assessments becoming due in subsequent years."

3. The "credit memorandum" issued by the FDIC provides in pertinent part: "The Federal Deposit Insurance Act provides that each insured bank shall be credited annually with its pro-rata share of sixty percent of the corporation's net assessment income for the preceding calendar year. * * * If the credit exceeds the assessment due, the excess will be deductible from the assessment due on or before the following January 15." It appears that credits are normally determined in June for the prior year.

suant to Section 7(d) of the Act, the amount of $278,985.34 as its pro-rata share of FDIC's net assessment income for the year 1950. On July 15, 1951, the taxpayer paid to the FDIC the semi-annual assessment for the six months ending December 31, 1951, by application of $251,264.09 of the credit standing to its account. On January 15, 1952, the taxpayer paid to the FDIC the semi-annual assessment due for the six months ending June 30, 1952, in the amount of $257,538.01, by application of the balance of its 1950 credit in the amount of $27,721.25 and by check in the amount of $229,816.76. On June 20, 1952, the FDIC placed to the taxpayer's credit, pursuant to Section 7(d) of the Act, the amount of $281,782.05, as its pro-rata share of FDIC's net assessment income for the year 1951. On July 15, 1952, the taxpayer paid to the FDIC the semi-annual assessment for the period ending December 31, 1952, in the amount of $266,411.71 by partial application of the said credit. (The unused balance of $15,370.34 of the credit was applied by the taxpayer in partial payment of the assessment which became due on January 15, 1953, for the six months ended June 30, 1953).

On its federal income tax return for the year 1952, the first year for which the taxpayer became subject to tax, (earlier exemption under Section 101(2), Internal Revenue Code of 1939, was repealed by Section 313(a), Revenue Act of 1951, c. 521, 65 Stat. 452), it deducted $523,949.72 as an ordinary and necessary business expense, that being the sum of its semi-annual assessments for that calendar year. The taxpayer did not include in it gross income for the year 1952 the amount of $281,782.05 representing the credit which it received on June 20, 1952.

The Commissioner of Internal Revenue determined that the credit of $281,-782.05, which accrued to the taxpayer on June 20, 1952, was taxable income for the year 1952, but did not disturb, insofar as relevant here, the deduction in the amount of $523,949.72.[4] Taxpayer filed a timely claim for refund, which was rejected; hence this suit.

The District Court determined that the 1952 credits were not recoveries of overpayments of deposit insurance assessments nor specific reductions of any particular assessment; that the taxpayer had bought and paid for something of value, and did not incur a loss when it paid its 1951 assessment; that the assessments, under the Act, are not tentative assessments; and that only if the FDIC operated in such manner that its assessment income exceeded its expenses and losses was it obliged to credit the 60% of profit to member banks. Accordingly, it concluded that the credit involved was income, and that it could not say that the Commissioner was in error.

■ We start with the principle, that Section 22(a) of the Internal Revenue Code of 1939 states the taxing power. It sweeps with a wide, stiff brush, and gets into the corners. Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 429–430, 75 S.Ct. 473, 99 L.Ed. 483. The burden undeniably rests upon the taxpayer to take the credit here involved out of the income class, and to show that the Commissioner was wrong. Taxpayer also has the burden of showing that the District Court plainly erred.

■ Under Section 7(a) of the Federal Deposit Insurance Act, the assessment is absolute, not contingent. It is deductible when paid or accrued. Indeed, as the taxpayer points out, the total assessment, unreduced by any credit, under Section 7(d), is used in determining the pro-rata share of the net assessment income of the FDIC to which an insured bank may become entitled; the credit is applied as a payment against the assessments to become due according to the specific directive of the statute. Thus, the credit is a distribution of the stated percent of the FDIC's assessment income after expenses and losses (including additions to re-

4. Rev.Rul. 62, 1953–1 Cum.Bull. 71; Rev.Rul. 55–478, 1955–2 Cum.Bull. 18.

serves) for the calendar year are determined, each insured bank being entitled to a pro-rata share thereof measured by its assessment for that year, and even though its assessment may have been paid in whole or in part by the application of a credit or credit balance.

In the terms of the Act, we find no basis for a conclusion that the District Court clearly erred. For it does not appear to us that the credit may be characterized as an overpayment, or as a retroactive reduction of particular assessments paid, with respect to the calendar year in which FDIC's operations resulted in credits.

The taxpayer relies upon legislative history to support its contention that the credit accrued to it in 1952 was a return of a portion of its 1951 assessment.[5] It is obvious of course, that there was both the desire and the effort to reduce the ultimate cost of deposit insurance to member banks. The method adopted, as was generally understood, was to preserve inviolate the fixed assessment and to pass on the benefit of "good years" by way of "dividend" payments. Nothing, however, impels the conclusion that Section 7(d) of the Act provides for a refund of any specific prior assessment, rather than the distribution of FDIC's surplus assessment income. And, as we have stated, Section 7(d) does not purport to reduce assessments for the prior year in the operation of the FDIC, insofar as the determination of its net assessment income is concerned, or in the liability of member banks for assessments under Section 7(a) of the Act.

We cannot conclude, therefore, that the District Court was plainly wrong in its determination that the credit here involved was neither a retroactive recovery nor a reduction of the prior year's expenses, but constituted taxable income under Section 22(a) of the Internal Revenue Code of 1939.

For the reasons stated, the Order of the District Court will be affirmed.

BIGGS, Chief Judge (dissenting).

The credit which accrued to the taxpayer in 1952 was a recovery of a portion of the taxpayer's 1951 assessment. The credit did not constitute taxable income to the taxpayer because the 1951 assessment was not connected with any corresponding tax benefit in 1951. Had the taxpayer been subject to income tax in 1951 (which it was not) it could have deducted the amount of the assessment as an ordinary and necessary expense of doing business. "When a taxpayer receives * * * a refund of an expenditure made in a previous year that refund is [treated as] a return of capital unless he has retained some advantage from the initial expenditure." Bartlett v. Delaney, D.C.Mass.1948, 75 F.Supp. 490, 493, affirmed, 1 Cir., 1949, 173 F.2d 535, certiorari denied 338 U.S. 817, 70 S.Ct. 59, 94 L.Ed. 495. Though there was an advantage to the taxpayer in paying the assessment since it gained deposit insurance thereby, the refund was nonetheless governed by Section 7(d) of the Federal Deposit Insurance Act, 12 U.S.C.A. § 1817(d) (1952) and was within the statutory exclusion expanded by the Supreme Court in Dobson v. Commissioner, 1943, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, for the recovery of items not specifically mentioned in Section 22(b) (12) of the Internal Revenue Code of 1939. The refund is analogous to payment by way of returns from a mutual insurance company to a policy holder. This is what Congress had in mind as demonstrated by the legislative history. See Hearings before the Sub-Committee on Federal Reserve Matters of the Senate Commit-

---

5. Particularly, H.Rep. No. 2564, 81st Cong., 2d Sess., 2 U.S.C.Cong. & Adm. News (1950), 3765, 3767, 3770; Hearings before the Sub-Committee of the Committee on Banking & Currency, on Bills to Amend the Federal Deposit In-

surance Act, 81st Cong., 2d Sess. (1950), pp. 101–102. Reference is made by the United States to S.Rep. No. 1269, 81st Cong. 2d Sess.; and 96 Cong.Record, Part 8, pp. 10648–10671, in addition to the foregoing generally.

tee on Banking and Currency, on Bills to Amend the Federal Deposit Insurance Act, 81st Cong., 2nd Sess. (1950) at pp. 101–102. Indeed, the Chairman of the Board of the FDIC, testifying before the Sub-Committee, stated, "There is nothing new about this plan. Generally it follows the 110-year-old-pattern set by mutual insurance." Senate Hearings, id. pp. 24–25.

The result reached by the majority opinion is to make the taxpayer pay as an extra "premium" for its deposit insurance the amount of $139,200.00 with interest, collected by the United States by way of tax assessment. I cannot believe that this was the result intended by Congress and I conclude that the taxpayer should have judgment here. For these reasons I dissent.