T.C. Memo. 2000-283


UNITED STATES TAX COURT


CHRYSLER CORPORATION, F.K.A. CHRYSLER HOLDING CORPORATION, AS
SUCCESSOR BY MERGER TO CHRYSLER MOTORS CORPORATION AND ITS
CONSOLIDATED SUBSIDIARIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22148-97.          Filed August 31, 2000.


James P. Fuller, Ronald B. Schrotenboer, Kenneth B. Clark,
James C. Garahan, and Laura K. Zeigler, for petitioner.

Robin L. Herrell and Nancy B. Herbert, for respondent.


MEMORANDUM OPINION


LARO, Judge: Respondent moves the Court for partial summary
judgment. See Rule 121.[1] Respondent determined deficiencies in
petitioner's 1983, 1984, and 1985 Federal income taxes in the

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue. All
Rule references are to the Tax Court Rules of Practice and
Procedure.

amounts of $593,967, $13,064,705 and $36,102,409, respectively. In relevant part, respondent determined that petitioner could not accrue a deduction of its estimated lifetime warranty expenses, or a part thereof, for vehicles that were sold during the corresponding year.

We must decide whether for Federal income tax purposes all events necessary to determine petitioner's liability for its warranty expenses have occurred when it sells its vehicles to its dealers; in other words, has petitioner satisfied the first prong of the all events test entitling it to deduct its estimated future warranty costs on the sale of such vehicles? We hold that it has not.

The following statement of the background of this case is based on the parties' joint statement of undisputed and disputed facts, stipulation of facts--warranty issue, and attached exhibits.

## Background

Petitioner's principal place of business was located in Auburn Hills, Michigan, when the petition was filed. Petitioner keeps its books and computes its income for financial purposes and for Federal income tax purposes using the accrual method of accounting. It uses a calendar year as its taxable year.

Petitioner manufactures and sells automobiles and trucks (vehicles). Petitioner generally sells the manufactured vehicles to dealers, who resell the vehicles to retail customers. A sale

generally occurs when a vehicle is delivered to the carrier for shipment to the dealer, at which time title passes from petitioner to the dealer.

Petitioner provides written manufacturer's warranties to the retail purchasers of its new vehicles. These warranties inform purchasers that the scope of the written warranty covers defects in their vehicles, provided that the defects occur during normal use and within specified warranty periods. The written warranties provide in part that petitioner will provide repair or replacement of defective parts or workmanship without charge.

Generally, the written warranties are of two types, basic warranties and extended warranties. Basic warranties typically provide coverage for 1 year from the warranty starting date (the date of original retail delivery or original use, whichever occurs first). Extended warranties generally take effect when the basic warranty has expired. Petitioner's extended warranties frequently are valid for 5 years from the warranty starting date or until the vehicle has 50,000 miles, whichever occurs first. In some instances the extended warranties have shorter periods, such as 24 months or 24,000 miles.

Before petitioner can provide the warranty service required, the owner of a vehicle has to return the vehicle for service, generally to the selling dealer. Petitioner's dealers perform the service and then make a claim on petitioner for reimbursement. In the event the vehicle owner is traveling or

has moved, the written warranties require the owner to seek warranty service from any Chrysler Corp. dealer selling the same make of vehicle. The warranties for model years 1981 through 1986 direct the owner to contact the nearest Chrysler Corp. dealer if failure of a warranted part necessitates emergency service.

The warranties, in part, set forth procedures an owner could follow if unsatisfied with the dealer's response to the request for warranty service. The owner can choose to discuss the matter with the selling dealer's management, the Customer Relations Department in the nearest Chrysler Zone Office, and/or Chrysler's Customer Relations Department in Detroit. For model years 1982 through 1986, the written warranties added that the owner could, in some cases, take the matter to a Chrysler Corp. Customer Satisfaction Board, and in other cases, to the Customer Arbitration Board.

The written vehicle warranties do not cover all problems that might arise with the vehicle during the applicable warranty periods. Coverage of repairs required as a result of fire, accident, abuse or negligence, failure to properly operate the vehicle, or alterations of the vehicle not recommended or approved by petitioner are expressly excluded. Also, expressly excluded are repairs required due to lack of maintenance or improper maintenance. The warranties, for model years 1981 through 1986, do not cover damage from the environment, such as

damage from airborne fallout, chemicals, tree sap, salt, road hazards, hail, windstorms, lightning, floods, and other acts of God.  In the warranties for all model years, coverage is excluded for any vehicle which has an altered odometer reading.

In addition to the express contractual provisions of petitioner's written warranties, petitioner is obligated to comply with certain implied warranty provisions mandated by Federal and State statutes.  The statutes applicable include the Magnuson-Moss Federal Warranty Act, 15 U.S.C. secs. 2301-2312 (1994), the Clean Air Act of 1970, 42 U.S.C. secs. 7521(d), 7541(a) (1994), the FTC Act, 15 U.S.C. sec 41 (1994), and the Uniform Commercial Code (as adopted by various States) and State "lemon laws".  State "lemon laws" typically provide that if the manufacturer cannot fix the defective part to conform to the express warranty after a "reasonable number of attempts", and the nonconformity "substantially impairs" the vehicle's value or use, the manufacturer must replace the vehicle or refund the purchase price.

Petitioner enters into written agreements with its dealers requiring them to correct conditions covered by petitioner's warranties.  In order to obtain reimbursement from petitioner, the agreements require the dealers to submit claims after repairs.  Petitioner reimburses the dealers for providing warranty service, provided that the dealers performed and recorded the services as outlined in petitioner's Warranty Policy

& Procedure Manual (warranty manual) and submitted valid warranty claims.

The warranty manual provides detailed instructions to petitioner's dealers which guide them in the administration of petitioner's warranty liabilities.  It also contains the procedures for obtaining reimbursement for providing warranty service.  The warranty manual requires dealers to obtain authorization before proceeding with certain warranty repairs.  It also provides an appeal procedure for dealers to appeal claims when petitioner has paid less than the full amount of the claim or refused to pay.

In certain circumstances, the warranty manual requires dealers to return defective parts or materials to petitioner.  The warranty manual warns dealers that petitioner has adjusted, denied, or charged back to the dealers a significant number of claims because improper packaging of the returned parts resulted in missing or mutilated material and/or claims.

Petitioner's corporate internal audit department periodically reviews warranty payments to dealers.  These reviews sometimes result in petitioner's determining that the dealers have received warranty cost reimbursements to which they are not entitled.  Petitioner charges the dealers for the amounts of such reimbursements.

<u>Discussion</u>

Whether a business expense has been "incurred" so as to

entitle an accrual-basis taxpayer to deduct it under section 162(a) is governed by the "all events" test as set out in United States v. Anderson, 269 U.S. 422, 441 (1926).  In Anderson, the Supreme Court held that a taxpayer was entitled to deduct from its 1916 income a tax on profits from munitions sales that took place in 1916.  Although the tax would not be assessed and therefore would not formally be due until 1917, all the events had occurred in 1916 to fix the amount of the tax and to determine the taxpayer's liability to pay it.  The all events test is now embodied in section 1.461-1(a)(2), Income Tax Regs., which provides: "Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy."[2]  See United States v. General Dynamics Corp., 481 U.S. 239, 242-243 (1987).

Thus, under the regulations, the all events test has two prongs, each of which must be satisfied before accrual of an

_____

[2]While it is not relevant to our decision of whether or not the first prong of the all events test has been met, we note that the enactment of sec. 461(h)(1) provides that the all events test shall not be treated as met any earlier than when economic performance occurs.  Under sec. 461(h), not only must both prongs of the all events test be met, but, additionally, economic performance must have occurred.  Generally sec. 461(h) applies "to liabilities that would, under the law in effect before the enactment of section 461(h), be allowable as a deduction or otherwise incurred after July 18, 1984."  Sec. 1.461-4(k), Income Tax Regs.

expense is proper. First, all the events must have occurred which establish the fact of the liability. Second, the amount must be capable of being determined "with reasonable accuracy." Sec. 1.461-1(a)(2), Income Tax Regs. (accrual of deductions); sec. 1.446-1(c)(1)(ii), Income Tax Regs. (accrual in general). For the purpose of deciding this motion, only the first prong of the test is relevant. For the purpose of the first prong of the test the Supreme Court has stated that the liability must be "final and definite in amount", Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 287 (1944), "fixed and absolute", Brown v. Helvering, 291 U.S. 193, 201 (1934), in order to be deductible. See also Helvering v. Russian Fin. & Constr. Corp., 77 F.2d 324, 327 (2d Cir. 1935) ("The existence of an absolute liability is necessary; absolute certainty that it will be discharged by payment is not."), affg. a Memorandum Opinion of this Court.

Petitioner's deductions for anticipated warranty expenses in 1984 and 1985 were based on the theory that the last event necessary to establish petitioner's warranty liability was the sale of a vehicle to a dealer. Petitioner argues that the issue we must decide "properly formulated, is whether Respondent has established with a sufficient record of undisputed facts that he is entitled to judgment as a matter of law that all events have not occurred by the end of the 1984 and 1985 taxable years, respectively, that determine the fact of Petitioner's warranty

liability."

Respondent bears the burden of proving his entitlement to a partial summary judgment.  See Rule 121(b); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).  The factual materials presented and the inferences therefrom must be viewed in the light most favorable to the party opposing the motion.  See Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Petitioner argues respondent has not provided either evidence or explanation that shows petitioner's statutory warranty liabilities are not fixed by statutes, such as the U.C.C., Magnuson-Moss, and State "lemon laws".  Petitioner places reliance on United States v. Hughes Properties, Inc., 476 U.S. 593 (1986), for the proposition that statutory liabilities satisfy the first prong of the all events test.  Petitioner states: "It is well settled that if a liability is fixed by statute, it is fixed under the first prong of the All Events Test."[3]  We find petitioner's reliance on United States v. Hughes Properties, Inc., supra, and other cases[4] cited to be

---

[3]Petitioner uses the term "statutory liability" to refer to liabilities arising from statutes or regulations promulgated pursuant to a statute.

[4]Petitioner also cites:  United States v. Anderson, 269 U.S. 422 (1926) (involved a statutory liability that arose upon the profitable sale of munitions); Kaiser Steel Corp. v. United States, 717 F.2d 1304 (9th Cir. 1983); Wien Consol. Airlines, Inc. v. Commissioner, 528 F.2d 735 (9th Cir. 1976), affg. 60 T.C. 13 (1973); Denise Coal Co. v. Commissioner, 271 F.2d 930 (3d Cir. 1959), revg. 29 T.C. 528 (1957); Exxon Mobil Corp. v. Commissioner, 114 T.C. 293 (2000) (a portion of the liability fixed by State regulations met the first prong); Ohio River
(continued...)

misplaced.

In Hughes Properties, the taxpayer was a Nevada casino that was required by State statute to pay as a jackpot a certain percentage of the amounts gambled in progressive slot machines. The taxpayer was required to keep a cash reserve sufficient to pay the guaranteed jackpots when won.  Hughes Properties at the conclusion of each fiscal year entered the total of the progressive jackpot amounts (shown on the payoff indicators) as an accrued liability on its books.  From that total, it subtracted the corresponding figure for the preceding year to produce the current tax year's increase in accrued liability.  On its Federal income tax return this net figure was asserted to be an ordinary and necessary business expense and deductible under section 162(a).  The Court found that the all events test had been satisfied and the taxpayer was entitled to the deduction. The Court reasoned that the State statute made the amount shown on the payout indicators incapable of being reduced.  Therefore the event creating liability was the last play of the machine before the end of the fiscal year, and that event occurred during the taxable year.

We conclude that the cases cited by petitioner do not strictly stand for the proposition that if a liability is fixed

⁴(...continued)
Collieries Co. v. Commissioner, 77 T.C. 1369 (1981) (Court reviewed); Buckeye Intl., Inc. v. Commissioner, T.C. Memo. 1984-668.

by statute, that fact alone meets the first prong of the all events test.  Rather we are of the opinion that the first prong of the all events test may be met when a statute has the effect of irrevocably setting aside a specific amount, as if it were to be put into an escrow account, by the close of the tax year and to be paid at a future date.  In the instant case, the applicable statutes do not so provide.

Respondent relies on the analysis contained in the Supreme Court's opinion in United States v. General Dynamics Corp., 481 U.S. 239 (1987).  In General Dynamics, the taxpayer, who self-insured its employee medical plan, deducted estimated costs of medical care under the plan.  The employer's liability was determinable.  The employees' medical needs had manifested themselves, employees had determined to obtain treatment, and treatment had occurred.  The only events that had not occurred were the employees' filing claims for reimbursement before the end of the taxable year.  The Supreme Court found that the all events test was not met until the filing of properly documented claims.  The filing of the claim was the last event needed to create the liability and therefore absolutely fix the taxpayer's liability under the first prong of the all events test.  See id. at 244.

Petitioner focuses on the fact that the liability in United States v. Hughes Properties, Inc., supra, was in part fixed by operation of statute and concludes from that that the first prong

of the all events test is satisfied if a statute in part works to fix the liability. We do not agree. In both <u>Hughes Properties</u> and <u>General Dynamics</u> the Supreme Court focused on the last event that created the liability. In <u>Hughes Properties</u> the event creating liability was the last play of the machine before the end of the fiscal year. Because the Nevada statute fixed the amount of the irrevocable payout, that play crystalized or fixed absolutely the taxpayer's liability, thus satisfying the first prong of the all events test. In <u>General Dynamics</u>, the last event that created the liability was the employee filing the claim for reimbursement.

We are unable to find sufficient differences between the facts in <u>General Dynamics</u> and those of the instant case to justify departing from the Supreme Court's analysis. Here, as in <u>General Dynamics</u>, the last event fixing liability does not occur before the presenting of a claim, either a claim for warranty service by the customer through one of petitioner's dealers or a claim for reimbursement made on petitioner by the dealer.

The Supreme Court stated:

It is fundamental to the "all events" test that, although expenses may be deductible before they have become due and payable, liability must first be firmly established. This is consistent with our prior holdings that a taxpayer may not deduct a liability that is contingent, see <u>Lucas v. American Code Co.</u>, 280 U.S. 445, 452, (1930), or contested, see <u>Security Flour Mills Co. v. Commissioner of Internal Revenue</u>, 321 U.S. 281, 284, (1944). <u>Nor may a taxpayer deduct an estimate of an anticipated expense, no matter how statistically certain, if it is based on events that</u>

have not occurred by the close of the taxable year. Brown v. Helvering, 291 U.S. 193, (1934); cf. American Automobile Assn. v. United States, 367 U.S. 687, 693, (1961).  [Id. at 243-244; emphasis added.]

Prior to the Supreme Court's decision in Hughes Properties, but consistent with its reasoning, this Court in World Airways v. Commissioner, 62 T.C. 786 (1974), affd. 564 F.2d 886 (9th Cir. 1977), found that a statutory liability by itself was insufficient to fix liability for the purposes of the all events test.  The Court found it was not the statute acting alone that caused the liability.  In that case the taxpayer was statutorily required to overhaul its aircraft after specified numbers of flight hours.  The Court refused to allow deduction of a portion of the anticipated overhaul costs corresponding to the amount of flight hours logged in the taxable year, as "Petitioner was under no obligation to make any payment unless an overhaul was actually performed."  Id. at 802.  Only if the taxpayer continued to use the aircraft would the point at which overhaul was required be reached.  While the Court found that the possibility the aircraft might crash or be grounded was perhaps remote, it recognized the more substantial possibility that the taxpayer's use of the aircraft could be cut short because of a sale of the aircraft. See id. at 804.  In contrast to Hughes Properties, the statute did not require the equivalent of setting aside a specific reserve fund based on the hours flown during the fiscal year. Thus even assuming, arguendo, that the basis of part of

petitioner's liability was fixed by statute,[5] that fact alone is insufficient to satisfy the first prong of the all events test.

In the instant case we do not find it necessary to determine the exact point in time when the first prong of the all events test would be met. For respondent to prevail on his motion it is necessary only that we determine that the first prong of the all events test has not been met when the vehicles are sold to the dealers. We hold, as was the case in United States v. General Dynamics Corp., supra, the last event in the fixing of liability occurs no sooner than when a claim is filed with petitioner by one of its dealers or by the retail customer. In light of the decision in General Dynamics, we find unpersuasive petitioner's arguments that the partial statutory nature of its warranty liability fixes the liability for warranty on the date of sale. We also find that there are no genuine issues as to any material fact. Accordingly,

> An appropriate order will be
> issued granting respondent's motion
> for partial summary judgment.

---

[5]For example, petitioner relies on liability being fixed by operation of U.C.C. sec. 2-725(2). Under U.C.C. sec. 2-725(2), 1B U.L.A. 587 (1989), "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made".