RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0068p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

────────────────

GOLD FOREVER MUSIC, INC.,

　　　　　　　　　　　*Plaintiff-Appellant*,

*v.*

UNITED STATES OF AMERICA,

　　　　　　　　　　　*Defendant-Appellee*.

> No. 18-1789

────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:17-cv-13927—George Caram Steeh, District Judge.

Decided and Filed: April 10, 2019

Before: McKEAGUE, GRIFFIN, and NALBANDIAN, Circuit Judges.

────────────────

**COUNSEL**

**ON BRIEF:** Neal Nusholtz, NEAL NUSHOLTZ, P.L.L.C., Troy, Michigan, for Appellant. Joan I. Oppenheimer, Geoffrey J. Klimas, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

────────────────

**OPINION**

────────────────

　　　McKEAGUE, Circuit Judge. The statute of limitations for a wrongful levy action cannot begin until there has been a levy that attaches to the property at issue. In this case, notices of levy in 2012 did not constitute levies on royalties generated after the notices were served. For the reasons set forth below, the statute of limitations does not bar Gold Forever's wrongful levy action. Accordingly, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings.

I.

Gold Forever Music, Inc. (Gold Forever) is a music publishing company that has entered into agreements with various artists entitling it to half of the royalties collected for the sale and performance of those artists' work. Instead of directly licensing third parties to use music from its catalog, Gold Forever works with Broadcast Music, Inc. (BMI) and Universal Music Publishing (Universal) to do so. These companies license others to use Gold Forever's music, collect the royalties pursuant to those licensing agreements, and remit those royalties to Gold Forever.

Edward Holland, Jr. is the sole owner of Gold Forever. He was a Motown artist and has co-written several famous songs such as "You Can't Hurry Love" by the Supremes and Phil Collins, "Where Did Our Love Go" and "Stop In the Name of Love" by the Supremes, "How Sweet It Is (To Be Loved by You)" by Marvin Gaye and James Taylor, "You Keep Me Hangin' On" by Vanilla Fudge and Kim Wilde, "Just a Little Bit of You" by Michael Jackson, and many more. His music forms some, but not all, of Gold Forever's catalog. Holland owes millions of dollars to the IRS in taxes, interest, and penalties.

In 2012, to collect on Holland's tax deficiency, the IRS served two notices of levy, one to BMI and one to Universal. The notices identified Gold Forever as the "alter ego/nominee transferee of Edward Holland, Jr." The notices of levy required the companies to remit to the IRS "property and rights to property . . . that you have or which you are already obligated to pay [Gold Forever]." It is unclear from the complaint whether BMI and Universal remitted any monies to the IRS between 2012 and 2016. Beginning on October 6, 2016, through the date of the complaint, BMI and Universal remitted a combined $967,140.76 to the IRS. Gold Forever made requests for refunds to the IRS within nine months of BMI and Universal remitting the funds.

On December 6, 2017, Gold Forever filed a wrongful levy action for the funds remitted beginning on October 6, 2016. Gold Forever's complaint alleged that it has never been the alter ego or nominee of Holland and that most, if not all, of the money remitted by BMI and Universal belongs either to Gold Forever or to artists other than Holland. The government moved to

dismiss Gold Forever's wrongful levy suit as untimely, having been filed after the statute of limitations had run. The district court agreed with the government and granted the motion to dismiss.

## II.

We review de novo the grant of a motion to dismiss, construing the complaint in the light most favorable to the non-movant, accepting their well-pleaded factual allegations as true, and drawing all reasonable inferences in their favor. *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 (6th Cir. 2013).

The IRS has several methods to collect monies owed by delinquent taxpayers, one of which is the power of levy. *See* 26 U.S.C. § 6331(a). Levy "includes the power of distraint and seizure by any means." *Id.* § 6331(b). A levy can reach "all property and rights to property . . . belonging to [the taxpayer]." *Id.* § 6331(a). In addition to levying on property in the taxpayer's control, the IRS can levy on property belonging to the taxpayer under another's control.

> In the situation where a taxpayer's property is held by another, a notice of levy upon the custodian is customarily served pursuant to § 6332(a). This notice gives the IRS the right to all property levied upon, and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government. If the custodian honors the levy, he is "discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment." § 6332(d). If, on the other hand, the custodian refuses to honor a levy, he incurs liability to the Government for his refusal.

*United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720–21 (1985) (some citations omitted).

There are only two defenses for failing to comply with the levy demand. First, that the third party is "neither 'in possession of' nor 'obligated with respect to' property or rights to property belonging to the delinquent taxpayer" and second, that the property is "subject to a prior judicial attachment." *Nat'l Bank of Commerce*, 472 U.S. at 722 (citation omitted). The third party must comply with the levy demand even if it or any other party claims an interest in the levied property.

Any person other than the taxpayer who claims an interest in the levied property may pursue a wrongful levy action against the United States under 26 U.S.C. § 7426(a) for recovery of the levied property.  An action under § 7426(a) is "the exclusive remedy for an innocent third party whose property is confiscated by the IRS to satisfy another person's tax liability." *EC Term of Years Tr. v. United States*, 550 U.S. 429, 433 (2007) (citation omitted).  The wrongful levy action "may be brought without regard to whether such property has been surrendered."  26 U.S.C. § 7426.

At the time relevant to this appeal, a wrongful levy action could be brought only within nine months "from the date of the levy or agreement giving rise to such action."  *Id.* § 6532(c)(1) (2017).[1]  A request for the return of the levied property under 26 U.S.C. § 6342 extended the nine-month period by twelve months from the date of filing the request so long as the request fell within the nine-month limitations period.  *Id.* § 6532(c)(2) (2017); *see Carter v. United States*, 110 F. App'x 591, 594 (6th Cir. 2004).  When the property or obligation levied on is intangible, we have held that the notice of levy qualifies as the "date of the levy" sufficient to start running the statute of limitations for a wrongful levy action.  *See State Bank of Fraser v. United States*, 861 F.2d 954, 967 (6th Cir. 1988) ("[S]ervice of the notices of levy on [taxpayer's] accounts receivable debtors commenced the running of the statute of limitations."); *see also Phelps v. United States*, 421 U.S. 330, 337 (1975) ("Historically, service of notice has been sufficient to seize a debt, and notice of levy and demand are equivalent to seizure." (citations omitted)).

As relevant here, a levy may "extend only to property possessed and obligations existing at the time thereof."[2]  26 U.S.C. § 6331(b).  An applicable regulation in the CFR explains, by way of example, that a bank account can be levied on, which attaches the entirety of the contents to which the taxpayer has a property right.  26 C.F.R § 301.6331-1(a).  But, the regulation notes, if there is a deposit made into the same bank account subsequent to the levy, the levy does not reach that new deposit, and the IRS must issue a subsequent levy to attach those funds.  *Id.* "Obligations exist when the liability of the obligor is fixed and determinable although the right to

---

[1]The current limitations period is two years.  26 U.S.C. § 6532(c)(1).

[2]The statute makes narrow exceptions to this rule, permitting continuing levies for salary, wages, and certain specified payments.  26 U.S.C. §§ 6331(e), (h).

receive payment thereof may be deferred until a later date." *Id.*; *see also Tull v. United States*, 69 F.3d 394, 397 (9th Cir. 1995). An obligation can come due after the date of the levy and still be fixed and determinable. As the CFR points out, where a taxpayer has sold personal property on the first day of the month and has agreed that the purchaser will remit payment on the last day of the month, that obligation is fixed and determinable such that a levy made in the middle of that month still reaches the payment when it comes due. 26 C.F.R § 301.6331-1(a).

Taking the facts in the complaint in the light most favorable to Gold Forever, the royalties remitted beginning in 2016 were generated after the 2012 notices of levy. The only property or obligation to which the levy could potentially attach in 2012 were Gold Forever's agreements with BMI and Universal to remit future royalties to Gold Forever. So, the question on appeal is whether the 2012 notices of levy reach the royalties generated after 2012 by virtue of the agreements in place when the notices of levy were served.

The answer to that question depends on whether the royalties remitted to the IRS beginning in 2016 were fixed and determinable in 2012 when the notices of levy issued. If they were not fixed and determinable, the notices of levy could not reach the royalties and the limitations period could not begin to run. If they were fixed and determinable, the notices of levy would have been sufficient to qualify as the "date of the levy" under § 6532(c)(1), beginning the limitations period.

Determining whether the 2012 levies attached to royalties acquired after the notices of levy is necessary to finding when the limitations period began to run for a wrongful levy action on those royalties. The government insists, without explanation, that determining the scope of the 2012 levies affects only the relief that could be awarded in the wrongful levy action and that considering the scope of the levies conflates "the statute of limitations with the merits of the claim." The government's concern is misplaced. Whether the levy attached to property is not part of the merits of a wrongful levy action—*i.e.*, that the levy was made on property or a right to property in which the non-taxpayer has an interest. *See Nat'l Bank of Commerce*, 472 U.S. at 739 (quoting *United States v. Rodgers*, 461 U.S. 677, 695 (1983)). A levy attaching to property or the right to property is necessarily antecedent for the statute of limitations to begin running on a wrongful levy action concerning that property.

We have not previously addressed when an existing contractual obligation to pay the taxpayer in the future is sufficiently fixed and determinable such that a levy can attach to that future payment. Decisions from our sister circuits provide useful guiderails.

Prior to the levy statute being amended to permit continuing levies on wages and salaries, the Second Circuit noted that a levy could not reach future earnings from salary or wages because "[t]hey are contingent upon performance of a contract of service and represent no existing rights of property." *United States v. Long Island Drug Co.*, 115 F.2d 983, 986 (2d Cir. 1940); *see also Wagner v. United States*, 573 F.2d 447, 454 (7th Cir. 1978) ("[Taxpayer's] future wages and commissions were contingent on his continued employment and thus did not represent an existing property right to which a lien[3] could attach. [Taxpayer] had no present right to the wages and commissions.").

Similarly, the Ninth Circuit found that a levy could not reach the proceeds of an auction of the taxpayer's property that had not been conducted when the levy was served. *Tull*, 69 F.3d 394. The taxpayer had negotiated with an auctioneer to auction some of the taxpayer's assets. Prior to the auction, the auctioneer received a notice of levy seeking the auction proceeds. *Id.* at 395. The question on appeal was whether the future auction proceeds were fixed and determinable in light of the agreement between the taxpayer and the auctioneer and the significant preparations that had been made by the auctioneer such as circulating advertising brochures and cleaning some of the assets to be sold. *Id.* at 396. The Ninth Circuit observed that "an obligation to attempt to sell some as yet undetermined amount of property for an as yet undetermined price to as yet undetermined buyers" was not fixed and determinable. *Id.* at 397. The court commented:

> An actual sale of property would establish both the price of that property and the duty of the buyer to pay the price, even if the date of payment were deferred. On the other hand, if a prospective buyer had not yet agreed to pay anything and was only thinking about whether he would buy at all, it could hardly be argued that the possible ultimate payment was property of the prospective seller. If the buyer did later agree to purchase at a certain price, a new levy would reach that amount, just as it would reach a later deposit in a bank. But to call an obligation both fixed

---

[3]The definition of property and rights to property is the same for liens under § 6321 and levies under § 6331. *See Dominion Tr. Co. of Tenn. v. United States*, 7 F.3d 233 (6th Cir. 1993).

and determinable when there has been no sale at all, no prospective buyer, no final determination of what will be sold, and no notion of the price is to strip the words "fixed and determinable" of all meaning.

*Id.* at 398.

The Ninth Circuit distinguished *Tull* from its prior decision in *United States v. Hemmen*, 51 F.3d 883 (9th Cir. 1995). In *Hemmen*, the court held that an allowed administrative claim in an unsettled bankruptcy was fixed and determinable. *Id.* at 885. The taxpayer had briefly administered a Chapter 11 bankruptcy as the debtor-in-possession before the proceeding was converted to a Chapter 7 liquidation and a trustee was appointed. *Id.* at 886. The bankruptcy court awarded the taxpayer an allowed administrative expense for his work as administrator prior to the conversion to Chapter 7. While bankruptcy proceedings were ongoing, the Chapter 7 trustee received a notice of levy to surrender property belonging to the taxpayer. The trustee did not surrender any property at that time. The IRS sought to hold the trustee personally responsible for failing to honor the levy. The trustee defended on the basis that he was not in possession of, or obligated with respect to, the taxpayer's property when the levy was served because bankruptcy was ongoing and the amount available to pay administrative claims had not been determined. *Id.* The Ninth Circuit held that the allowed administrative expense *was* fixed and determinable because the underlying performance giving rise to the claim was complete and the claim had been allowed. *Id.* at 890. The mere possibility of "defeasance due to factors having no bearing on the underlying performance" did not affect the fact that the obligation was determinable because "[u]nlike a requirement that the extent of an obligation be 'determined,' the term 'determinable' requires only that the sum be capable of precise measurement in the future." *Id.*

These cases stand for the principle that a contractual obligation to pay money (or remit property) to the taxpayer after the date of the levy is "fixed" where performance is complete and all that remains under the contract is payment (or provision of property) to the taxpayer, and "determinable" if, at the time the levy is served, the amount that the taxpayer will be owed can be ascertained with reasonable accuracy, regardless of whether that amount is subject to potential

defeasance.[4] This makes sense. "The underlying principle justifying the administrative levy is the need of the government promptly to secure its revenues." *Nat'l Bank of Commerce*, 472 U.S. at 721 (quoting *Phillips v. Commissioner*, 283 U.S. 589, 596 (1931) (cleaned up)). Third parties will be able to determine at the time they receive the notice of levy precisely what the levy reaches, rather than guessing at whether it creates a persistent nebulous liability. This means the IRS will know immediately whether its levy will satisfy the delinquent tax obligation or if it will need to seek additional monies elsewhere.

Although the district court was correct that service of the notice of levy can start the statute of limitations running for intangible property, it is necessary for the notice of levy to *attach* to the property that is the subject of the wrongful levy action before the statute can run. In supplemental briefing submitted at this court's direction, the government concedes that "[t]he record does not contain sufficient information to determine whether Gold Forever's right to receive future royalties was attached by the 2012 levies." Appellee Suppl. Br. 5. Therefore, under the motion to dismiss standard, the district court should have drawn factual inferences in Gold Forever's favor and concluded that nothing remitted in 2016 and beyond represented any obligation owed in 2012—*i.e.*, the royalties had not yet been generated and so there was more remaining to be done under the contract, such as finding licensees and collecting royalties, than to simply remit royalties to Gold Forever. Taking the facts in the light most favorable to Gold Forever, the only thing that existed in 2012 was the obligation to remit royalties generated in the future. These royalties are similar to, if not even more indefinite than, the property to be auctioned in *Tull*. Gold Forever's agreements with Universal and BMI, therefore should have been construed as merely "an obligation to attempt to sell some as yet undetermined amount of property for an as yet undetermined price to as yet undetermined buyers." *Tull*, 69 F.3d at 397.

---

**4**We find additional support for this formulation in the body of tax law concerning whether an expense is sufficiently incurred to entitle an accrual-basis taxpayer to deduct it under 26 U.S.C. §162(a). That determination rests on whether "all events" have occurred to "fix the amount of the tax and determine the liability of the taxpayer to pay it." *United States v. Anderson*, 269 U.S. 422, 441 (1926). The "all events" test has two prongs: "First, all the events must have occurred which establish the fact of the liability. Second, the amount must be capable of being determined with reasonable accuracy." *Chrysler Corp. v. Comm'r*, 436 F.3d 644, 648 (6th Cir. 2006) (quoting *Chrysler Corp. v. Comm'r, No.* 22148–97, 2000 WL 1231528, 80 T.C.M. (CCH) 334, T.C.M. (RIA) 2000–283 (Aug. 31, 2000) (cleaned up)). In explaining the first prong, the Supreme Court noted that a liability is fixed when "the obligation to pay[] has become final and definite in amount." *Sec. Flour Mills Co. v. Comm'r*, 321 U.S. 281, 287 (1944).

Further, the district court should have drawn an inference in Gold Forever's favor that the earliest the statute of limitations could have begun running on Gold Forever's claim was when the IRS seized Gold Forever's funds held by BMI and Universal. *See*, *e.g.*, 26 U.S.C. § 6331(b) ("The term 'levy' as used in this title includes the power of distraint and seizure by any means."); *Id.* § 6532(c)(l) (2017) (providing that a wrongful levy action can only be brought within nine months "from the date of the levy or agreement giving rise to such action"). Here, the complaint alleges that Gold Forever filed requests for the return of the remitted funds within that nine-month period, and the complaint was filed within the twelve-month extension period provided to individuals who file such requests with the IRS. *Id.* § 6532(c)(2). Therefore, the district court should have concluded that, on the face of the complaint, this case was properly filed within the statute of limitations.

It may be, as the government suggests, that nothing the IRS did after 2012 constituted a subsequent levy. Thus, the funds remitted beginning in 2016 were not sent pursuant to a levy and therefore there could be no wrongful levy. *See Hamilton Nat'l Bank of Johnson City v. United States*, 367 F. Supp. 1110, 1112 (E.D. Tenn. 1972), *aff'd*, 486 F.2d 1405 (6th Cir. 1973) ("If there was no levy, certainly there could have been no 'wrongful' levy."). This argument, however, was not raised by the government in its motion to dismiss below, nor was it addressed by the district court. "In general, we will not review arguments or issues that a party raises for the first time on appeal." *Estate of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 925 (6th Cir. 2013) (citing *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006)). We decline to do so here.

### III.

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.